[Cite as *LeBlanc v. Wells Fargo,* 134 Ohio St.3d 250, 2012-Ohio-5458.]

LEBLANC ET AL., APPELLANTS, *v.* WELLS FARGO ADVISORS, L.L.C.;

BURCHFIELD, APPELLEE.

**[Cite as *LeBlanc v. Wells Fargo,* 134 Ohio St.3d 250, 2012-Ohio-5458.]**

*Civil procedure—Interpleader—Contract—When the custodian of an individual retirement account files an interpleader action against the parties claiming to be the beneficiaries of the account, the custodian waives its contractual change-of-beneficiary procedures, and a person who proves that the owner clearly intended to designate him or her as the beneficiary does not need to also prove that the owner substantially complied with the change-of-beneficiary procedures in order to recover. Instead, the account owner's clearly expressed intent controls.*

(Nos. 2011-2160 and 2011-2073—Submitted July 11, 2012—Decided November 28, 2012.)

APPEAL from and CERTIFIED by the Court of Appeals for Montgomery County, No. 24348, 196 Ohio App.3d 213, 2011-Ohio-5553.

_____

**SYLLABUS OF THE COURT**

When the custodian of an individual retirement account files an interpleader action against the parties claiming to be the beneficiaries of the account, the custodian waives its contractual change-of-beneficiary procedures, and a person who proves that the owner clearly intended to designate him or her as the beneficiary does not need to also prove that the owner substantially complied with the change-of-beneficiary procedures in order to recover. Instead, the account owner's clearly expressed intent controls.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we resolve a conflict between the decisions of the Ninth District Court of Appeals and the Second District Court of Appeals concerning the effect of an individual retirement account ("IRA") custodian's filing of an interpleader action against competing claimants. We hold that when the custodian of an individual retirement account files an interpleader action against the parties claiming to be the beneficiaries of the account, the custodian waives its contractual change-of-beneficiary procedures, and a person who proves that the owner of the account clearly intended to designate him or her as the beneficiary does not also need to prove that the owner substantially complied with the change-of-beneficiary procedures in order to recover. Instead, the account owner's clearly expressed intent controls.

{¶ 2} Because our holding rejects the analysis adopted by the Second District Court of Appeals in this case and because there exists a genuine issue of fact as to the intent of the account owner, John F. Burchfield, we reverse the court of appeals' judgment and remand this case to the common pleas court for trial.

## RELEVANT BACKGROUND

### *The disputed accounts*

{¶ 3} This is a dispute over money that Wells Fargo Advisors, L.L.C., was holding in two IRAs for John F. Burchfield when he committed suicide on December 16, 2009. In 2002, John designated his mother, appellant Gloria Welch, and his stepfather, Bruce Leland, as beneficiaries, 75 percent and 25 percent respectively.

{¶ 4} On May 5, 2007, John married appellee Cynthia Burchfield. Shortly before the marriage, John designated Cynthia as the sole beneficiary on both accounts.

2

*The disputed intent*

**{¶ 5}**   On October 28, 2009, John sent an e-mail to his Wells Fargo advisor, Aaron Michael, stating that he and Cynthia were getting divorced and requesting paperwork to remove Cynthia as the beneficiary on his IRAs. Thereafter, by telephone, John gave Michael specifics regarding a change in the beneficiary designation for the IRAs.   Michael prepared change-of-beneficiary forms that again designated Welch and Leland as the beneficiaries, 75 percent and 25 percent respectively.   In addition, John's sister, appellant Lori LeBlanc, was listed as the contingent beneficiary.   Michael predated the forms "November 2, 2009" and mailed them to John, along with a self-addressed, stamped envelope.

**{¶ 6}**   On November 2, 2009, Cynthia filed a divorce complaint against John.   Around the same time, John spoke with Michael and informed him that the change-of-beneficiary forms were "already taken care of."   Approximately six weeks later, John committed suicide.   He left a note that contained a postscript in which he expressed his love for Cynthia.

**{¶ 7}**   After John's death, Leland and LeBlanc asked Michael to look through John's financial documents to wind up John's affairs.   Around January 25, 2010, Michael and one of John's co-workers discovered the signed change-of-beneficiary forms in an envelope among John's papers.[1]   That same morning, Michael gave the forms to his manager at Wells Fargo.   Cynthia, LeBlanc, and Welch made conflicting demands of Wells Fargo for the IRA proceeds.

## PROCEDURAL HISTORY

**{¶ 8}**   In March 2010, LeBlanc[2] and Welch filed a complaint against Wells Fargo and Cynthia,[3] seeking a declaratory judgment[4] that Cynthia was not

---

1. The parties dispute whether the signatures on the forms are John's.

2. LeBlanc filed suit on behalf of John's estate and in her individual capacity.

entitled to the proceeds of John's IRAs. In turn, Cynthia sought a contrary declaration that she, as the beneficiary named on the form in Wells Fargo's possession at John's death, was solely entitled to the proceeds.

{¶ 9} In response, Wells Fargo filed an action in interpleader against LeBlanc, Welch, and Cynthia, in which it represented that it was "unable to determine the validity of the conflicting demands." Wells Fargo disclaimed any interest in the proceeds of John's IRA accounts and offered to deposit the funds with the court's clerk or to maintain the account until the dispute was resolved. The trial court granted summary judgment to Cynthia, the beneficiary designated on the form in Wells Fargo's possession at the time of John's death.

{¶ 10} The Second District Court of Appeals affirmed. *LeBlanc v. Wells Fargo Advisors, L.L.C.*, 196 Ohio App.3d 213, 2011-Ohio-5553, 962 N.E.2d 872. In doing so, it emphasized that John had not complied with the Wells Fargo policy, which required that change-of-beneficiary forms be returned to the company. *Id.* at ¶ 12. And it concluded that Wells Fargo had not waived compliance with its change-of-beneficiary procedure by filing an action in interpleader against the claimants. *Id.* at ¶ 11.

{¶ 11} In reaching that conclusion, the Second District rejected the Ninth District Court of Appeals' decision in *Kelly v. May Assoc. Fed. Credit Union*, 9th Dist. No. 23423, 2008-Ohio-1507, which held that an IRA custodian waives compliance with its change-of-beneficiary procedures when it interpleads disputed funds.

{¶ 12} The Second District further held that even if *Kelly*'s holding on this narrow legal point was correct and the custodian's filing of an interpleader

---

3. Leland was also named as a defendant, but he disclaimed any interest in the IRAs, along with all of John's other probate and nonprobate assets. The plaintiffs voluntarily dismissed Leland as a party.

4. The complaint set forth a number of other causes of action that are not relevant here.

action waived its right to enforce the change-of-beneficiary procedure, the parties claiming to be the "clearly intended" beneficiaries must still prove that the decedent had substantially complied with the change-of-beneficiary procedure. *LeBlanc* at ¶ 13. In doing so, it again rejected yet another *Kelly* holding—that the account holder's clearly expressed intent controls.

{¶ 13} Accordingly, the Second District concluded that John's failure to return the forms to Wells Fargo before his death constituted a failure to substantially comply with Wells Fargo's procedure and that that failure was fatal to Welch and LeBlanc's claims, without regard to John's actual intent. It affirmed summary judgment in favor of Cynthia.

{¶ 14} We granted LeBlanc and Welch's discretionary appeal, 131 Ohio St.3d 1456, 2012-Ohio-648, 961 N.E.2d 1135, and certified that a conflict exists between the Second District's decision in this case and the Ninth District's decision in *LeBlanc,* 131 Ohio St.3d 1455, 2012-Ohio-648, 961 N.E.2d 1134. We consolidated the actions, which present the same legal question.

## QUESTION PRESENTED

{¶ 15} The question certified by the Second District is: "In a dispute between (1) a specifically designated and (2) a clearly intended beneficiary of an individual retirement account (IRA), where the account custodian files an interpleader action and purportedly waives compliance with its change of beneficiary procedure, is the 'clearly intended' beneficiary required to show that the owner of the IRA account substantially complied with the change of beneficiary procedure in order to recover?"

{¶ 16} We answer the certified question in the negative.

## ANALYSIS

{¶ 17} Resolution of the issues before us requires that we answer two unsettled questions. First, when an IRA custodian files an interpleader action against competing claimants, does it waive its contractual change-of-beneficiary

procedures? And if so, what is the test for determining who is entitled to the disputed funds?

{¶ 18} Because we agree with the Ninth District's analysis and holding, we first turn our discussion to its opinion in *Kelly*, which squarely dealt with both questions.

*The Ninth District Opinion*

{¶ 19} Barbara Kelly opened an IRA at May Associates Federal Credit Union in 1992 and named her nephew, Richard Wachter, as the beneficiary. *Kelly,* 2008-Ohio-1507, at ¶ 4. She also granted Richard a general power of attorney and named him co-owner of a number of certificates of deposit.

{¶ 20} Barbara later granted a power of attorney to her daughter, Janice Kelly, and revoked the one she had given Richard. Barbara also made Janice the co-owner of her certificates of deposit and told Richard that she was going to make Janice the beneficiary of her IRA.

{¶ 21} On November 19, 1998, Barbara telephoned May Associates to name Janice the beneficiary of her IRA. Even though May Associates required that a beneficiary could be changed only by the member completing and signing an IRA beneficiary-designation form, the teller with whom Barbara spoke completed the change-of-beneficiary form and wrote "per member" on the signature line. The teller mailed a copy of the form she had completed to Barbara, placed a copy in the credit union's file, and sent a copy to the third-party administrator handling the IRA. Barbara was not told that she needed to sign the form.

{¶ 22} Barbara died in 2003. By that time, May Associates was using a different third-party administrator for the IRA. The new company had the designation of Richard on file that Barbara made when she opened the account but had no information about the form the teller filled out in 1998. The

administrator told Richard that he was the beneficiary. Janice and Richard made competing claims for the IRA proceeds. No money was paid out.

{¶ 23} Janice filed a complaint against Richard and May Associates, seeking a declaratory judgment that she was entitled to the IRA proceeds. May Associates filed an interpleader action against Janice and Richard. The trial court granted summary judgment to Janice on the ground that Barbara had clearly expressed her intent that Janice be the beneficiary of the IRA.

{¶ 24} The Ninth District Court of Appeals affirmed. *Kelly,* 2008-Ohio-1507, at ¶ 2. In doing so, it acknowledged that Barbara had not complied with the May Associates procedures, which required that changes to beneficiaries "be made by completing and signing an IRA beneficiary designation form." *Id.* at ¶ 5. But it concluded that May Associates waived the signature requirement when it filed the interpleader action. *Id.* at ¶ 13.

{¶ 25} To reach that conclusion, the *Kelly* court applied our holdings in cases dealing with life-insurance-policy proceeds and justified doing so because life-insurance policies and individual retirement accounts share a salient feature— they both "typically include a procedure for designating and changing beneficiaries." *Id.* The court then explained that "[i]t has long been the rule in Ohio that those procedures are intended to protect the insurer from duplicate liability and the insurer is free to waive them." *Id.*, citing *Rindlaub v. Travelers Ins. Co.*, 175 Ohio St. 303, 305, 194 N.E.2d 577 (1963), and *Atkinson v. Metro. Life Ins. Co.*, 114 Ohio St. 109, 150 N.E. 748 (1926), paragraph four of the syllabus.

{¶ 26} Indeed, "if, in the face of conflicting claims to insurance proceeds, the insurer interpleads those proceeds, it has waived any interest in the resolution of the claims, including enforcement of the procedure set forth in its policy for designating and changing beneficiaries." *Id.*, citing *Rindlaub* and *Atkinson*. "In such a case, if the insured communicated to the insurer her 'clearly expressed

intent' to change beneficiaries, the proceeds will be paid to the newly designated beneficiary rather than the originally designated beneficiary * * *." *Id.*, citing *Rindlaub* at paragraph two of the syllabus.

{¶ 27} There was no question that Barbara had telephoned May Associates and told a teller to change her beneficiary designation. "Based on [the teller's] testimony, coupled with the change of beneficiary form completed by the teller," the Ninth District concluded that there was no genuine issue of fact whether Barbara had clearly expressed to May Associates her intent to change her beneficiary. *Kelly*, 2008-Ohio-1507, at ¶ 27. Accordingly, it affirmed summary judgment in favor of Janice. *Id.* at ¶ 32.

### *The Second District opinion*

{¶ 28} The Second District refused to apply our holdings in the life-insurance cases to the dispute over John's IRA proceeds, and it therefore concluded that Wells Fargo did not waive its change-of-beneficiary procedures by interpleading the disputed funds. *See LeBlanc*, 196 Ohio App.3d 213, 2011-Ohio-5553, 962 N.E.2d 872, ¶ 23. In its view, an IRA is fundamentally different from a life-insurance policy because an IRA is a present asset of the account holder during her life, but a life-insurance policy—in one form—has no value to the insured during the insured's life. But in so holding, the Second District conceded that "there are many and varied financial products that come under the heading of 'life insurance' * * * some of which have a cash value that the owner of the policy can withdraw or borrow against." *Id.* at fn. 5.

{¶ 29} The appellate court concluded that IRAs are more akin to joint and survivorship accounts. *Id.* It reasoned that both are present assets of an account holder and both transfer outside of probate upon the death of the account holder. *Id.* For that reason, the Second District applied our holding in *Wright v. Bloom*, 69 Ohio St.3d 596, 635 N.E.2d 31 (1994), which is the leading case law applicable to disputes over joint bank accounts.

**{¶ 30}** In *Wright*, we held that in the absence of fraud, duress, undue influence, or lack of capacity, the opening of a joint and survivorship account was conclusive evidence of an intent to transfer the balance of the account upon the death of an account holder. *Id.* at paragraphs one and two of the syllabus. And there is "no need to go beyond the account contract to ascertain the creator's intent." *Id.* at 605. Instead, the dispositive question is simply whether the signature card or account documents specify that the joint account holders have survivorship rights. *Id.* at 606.

**{¶ 31}** In deciding *LeBlanc*, the Second District conceded that joint and survivorship accounts transfer purely by virtue of contract, while IRA proceeds transfer by virtue of the Uniform Transfer-On-Death Security Registration Act, which provides:

> "Any transfer-on-death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner of the security and the registering entity and by reason of sections 1709.01 to 1709.11 of the Revised Code and is not testamentary."

*LeBlanc,* 196 Ohio App.3d 213, 2011-Ohio-5553, 962 N.E.2d 872, ¶ 16, quoting R.C. 1709.09(A). It therefore justified applying the contracts rule developed in the joint-and-survivorship-account cases by emphasizing that the transfer of IRA proceeds "derives its effectiveness from the contract."[5] *Id.* Accordingly, the Second District concluded that Wells Fargo's requirements for a change of

---

5. On that point, the Second District warned: "[I]f a transfer upon death is effective by reason of the 'clearly expressed intent' of the insured, * * * R.C. 1709.09(A) does not save it from being included in the estate, subject to the formalities of the statute of wills and subject to the statutory benefits and elections that a surviving spouse may choose to receive." *LeBlanc* at ¶ 16. Our decision here makes clear that that result would be improper.

beneficiary controlled, and "because John did not comply with them, he did not change the beneficiary before his death." *Id.* at ¶ 23.

{¶ 32} The Second District also held, in the alternative, that even if insurance law applies and an IRA custodian waives its change-of-beneficiary procedures when it interpleads disputed funds, a party claiming that the account holder clearly intended to designate him or her as beneficiary is nonetheless required to prove that the account holder substantially complied with the custodian's change-of-beneficiary procedures in order to recover. *Id.* at ¶ 25. The appellate court concluded that John's failure to return the forms naming LeBlanc and Welch as beneficiaries was also a failure to substantially comply with the policy, even if John had otherwise clearly expressed his intent to change his beneficiary. *Id.* at ¶ 27.

{¶ 33} The Second District's holding applied the substantial-compliance test often used in disputes between life-insurance companies and claimants. *Id.* at ¶ 25. *See State Mut. Life Assur. Co. of Am. v. Holmes*, 10th Dist. No. 88AP-377, 1988 WL 92435 (Aug. 30, 1988) (holding that in a dispute between an insurance company and a life-insurance claimant, the insured, before his death, substantially complied with the insurance company's procedures in converting a whole-life policy to a universal-life policy, and thus the insurance company was required to pay the insured's beneficiary and not the insurance company's beneficiary under the temporary insurance agreement); *see also Benton v. United Ins. Co. of Am.*, 110 Ohio App. 151, 159 N.E.2d 912 (1st Dist.1959) (holding that in a dispute between an insurance company and a life-insurance claimant, the insurance company was required to pay the party whom the account holder clearly intended to designate as his beneficiary because the insured had substantially complied with the insurance company's change-of-beneficiary procedures).

{¶ 34} The Second District also claimed that its holding was not inconsistent with our decision in *Rindlaub,* because "substantial compliance with

10

the rules for a change of beneficiary was a part of the *Rindlaub* result."[6] *LeBlanc,* 196 Ohio App.3d 213, 2011-Ohio-5553, 962 N.E.2d 872, ¶ 26. We do not agree with either assertion.

{¶ 35} In *Rindlaub*, Bruce Rindlaub purchased two life-insurance policies from the Travelers Insurance Company. *Rindlaub,* 175 Ohio St. at 304-305, 194 N.E.2d 577. Travelers' procedures provided that a change of beneficiary had to be made in writing and had to be approved in writing by Travelers.

{¶ 36} Initially, Bruce designated his wife, Alice Rindlaub, as his primary beneficiary and his daughter, Cornelia, as the contingent beneficiary. Thereafter, Bruce and Alice divorced and Bruce sent Travelers a witnessed statement "clearly indicating his intention to cancel all previous designations of beneficiaries," to name Margaret Walker as the new primary beneficiary, and to rename Cornelia as the contingent beneficiary. *Id.* at 306.

{¶ 37} Travelers responded by letter inquiring as to the relationship between Bruce and his newly designated primary beneficiary. The letter stated that the contracts had been issued in a community-property state and therefore Alice had certain rights under the policies unless she had waived those rights or a court action had disposed of them.

{¶ 38} There was no proof that Bruce ever received the letter. Nothing further was done, either by Bruce or by Travelers. Six months later, Bruce and Margaret married. Thirteen years later, Bruce died. At the time of Bruce's death, the life-insurance policies listing Alice as the primary beneficiary were in his possession. Alice and Margaret made conflicting demands of Travelers for the IRA proceeds. No money was paid out.

---

6. The Second District also relied on *Magruder v. Northwestern Mut. Life Ins. Co*., 512 F.2d 507 (6th Cir.1975), a federal court of appeals' decision applying Tennessee law. In *Magruder*, the insured completed a change-of-beneficiary form but did not mail it to the insurer before his death. We find its reliance on *Magruder* unpersuasive.

**{¶ 39}** Margaret sued Travelers for the proceeds, and Travelers responded by filing an interpleader action against Margaret and Alice. We rejected Alice's claim to the proceeds, which was based on the fact that she was the beneficiary named on the policies. In describing the *strength* of Margaret's claim that she was the clearly intended beneficiary, we noted that absent evidence that Bruce had received the insurer's letter, it was "entirely reasonable to infer that [Bruce] believed he had done all that was necessary to effectuate a change of beneficiary." *Id.* at 306. We explained, therefore, that there was "no basis for inferring that [Bruce] abandoned his purpose * * * to change the beneficiary," as Alice had contended. *Id.*

**{¶ 40}** But we made clear that change-of-beneficiary procedures are for the benefit of the insurance company only. *Id.* at paragraph one of the syllabus. Indeed, they are "a means of establishing the fact that the insurer has received notice of the change of beneficiary." *Id.* at 305.

**{¶ 41}** We explained that such procedures may be determinative in litigation between an insurance company and the insured or a single beneficiary, but when "the insurer 'washes its hands' by interpleader," the controversy is between the parties who claim to be the rightful beneficiary. *Id.* "In such case the relative rights of the litigants should depend upon the expressed intention of the insured. If he has clearly indicated to the insurer his intention to change beneficiaries, his intention must be given effect." *Id.*

*We adopt the Ninth District's view*

**{¶ 42}** The Ninth District's rationale and holdings represent the better-reasoned view.

**{¶ 43}** We agree that it is material that life-insurance policies and IRAs both typically have a procedure for designating and changing beneficiaries. We recognize that the Uniform Transfer-On-Death Security Registration Act, which the parties agree governs distribution of IRA proceeds, establishes that a security

12

may be registered in beneficiary form. R.C. 1709.03; *see* R.C. 1709.01(A) (defining "beneficiary form" as "a registration of a security that indicates the present owner of the security and the intention of the present owner regarding the person who will become the owner of the security upon the death of the present owner"). And we recognize that the act establishes how a security registered in beneficiary form is transferred upon the death of the account holder. R.C. 1709.07 (upon the death of the account holder, ownership of a security registered in beneficiary form "shall pass to the beneficiary").

{¶ 44} But the transfer of IRA proceeds derives its effectiveness from the contract, as the Second District emphasized, and "from R.C. 1709.01 to 1709.11." R.C. 1709.09(A). And R.C. 1709.01 through 1709.11 provide protections to the custodian. R.C. 1709.08(A) ("If a registration in beneficiary form is offered by a registering entity, the owner requesting registration in beneficiary form assents to the protections given to the registering entity by sections 1709.01 to 1709.11 of the Revised Code").

{¶ 45} For all these reasons, we conclude that IRA change-of-beneficiary procedures are intended to protect the IRA custodian, and the custodian alone. *Id.; see also Rindlaub,* 175 Ohio St. at 305, 194 N.E.2d 577 (change-of-beneficiary procedures are "a means of establishing the fact that the insurer has received notice of the change of beneficiary," thereby avoiding duplicate liability for the insurer). Therefore, a custodian is free to waive the procedures by filing an action in interpleader against the claimants.

{¶ 46} We also adopt the "clearly expressed intent" test from our insurance cases. *See Rindlaub* at paragraph two of the syllabus. Therefore, if an IRA custodian files an interpleader action, and the account owner's intent to change beneficiaries was clearly communicated to the custodian, the proceeds will be paid to the newly designated beneficiary rather than to the original

beneficiary. *Id.* In such a case, proof of substantial compliance with the custodian's procedures for changing the beneficiary is not required.

## CONCLUSION

**{¶ 47}** We answer the certified question in the negative and, therefore, reverse the court of appeals' judgment. Because there is a genuine issue of fact as to the clearly expressed intent of the account owner, this case is remanded to the trial court for trial.

Judgment reversed

and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Brannon & Associates and David D. Brannon, for appellants.

Dungan & LeFevre Co., L.P.A., and James D. Brookshire, for appellee.

_____