**GENERAL MILLS FEDERAL CREDIT UNION,**
Plaintiff,

v.

**Jesse L. LOFGREN, Appellant, Colin B. Callahan, Respondent.**

No. A13–0781.

Court of Appeals of Minnesota.

Dec. 2, 2013.

Daniel M. Duffek, Peterson, Fram & Bergman, P.A., St. Paul, MN, for plaintiff.

Joseph F. Schmidt, Law Offices of Joseph F. Schmidt, Minneapolis, MN, for appellant.

Alan I. Silver, Tiffany M. Quick, Bassford Remele, P.A., Minneapolis, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; RODENBERG, Judge; and HOOTEN, Judge.

## OPINION

STONEBURNER, Judge.

In this interpleader action to determine the beneficiary of an IRA, appellant, who asserts that he is the intended beneficiary,

challenges the district court's grant of summary judgment in favor of respondent, the named beneficiary. Appellant argues that the district court erred by failing to consider evidence of (1) the intent of decedent IRA owner to change the IRA beneficiary and (2) decedent's reasonable belief that she had, in fact, effectively changed the IRA beneficiary before her death.

The district court declined to consider any evidence of decedent's intent or conduct and held that decedent's failure to comply strictly with the IRA custodian's stated procedure for changing an IRA beneficiary was conclusive. Because we conclude that the district court erred by implicitly holding that it was without authority to consider decedent's intent and actions taken to change the IRA beneficiary, we reverse and remand.

## FACTS

In March 2009, when Helen King (decedent) first established an IRA account with General Mills Federal Credit Union (GMFCU), she already held several accounts with GMFCU, including a savings account and three certificates of deposit, all with payable-on-death designations (POD accounts). Until November 2009, all of decedent's accounts, including the IRA, designated respondent Colin Callahan as the sole beneficiary.[1] Decedent's accounts, including the IRA, were listed separately on statements that were regularly sent to decedent. But the accounts did not have separate identifying numbers; rather, all were referenced under decedent's GMFCU member number.

The only evidence in the record of a GMFCU written policy about how to change an IRA beneficiary is a copy of GMFCU's "Traditional IRA Disclosure Statement" (disclosure statement), which consists of seven, three-column pages in small type.[2] A provision in the last paragraph in the middle column of page six states:

> You can change your beneficiaries in the future by completing a Beneficiary Change From. It is important to complete a new Beneficiary Change Form each time that something occurs that causes you to want your IRA to go to different beneficiaries.

Appellant, Jesse L. Lofgren, is decedent's grandson. According to Lofgren, decedent became dissatisfied with Callahan's work in the fall of 2009 and decided to make Lofgren the primary beneficiary of all of her GMFCU accounts. Lofgren attests that he was present when decedent called GMFCU and requested the forms to effectuate this intent, and that he knows what forms GMFCU provided to decedent.

In November 2009, decedent submitted an "Account Change Form" to GMFCU. The completed form that decedent returned to GMFCU has her member number at the top, a check mark in a box specifying "add/change payable on death (P.O.D.) account," and a handwritten note at the top specifying "[t]o apply to *all* accounts with [GMFCU]." The form designates Lofgren as the primary beneficiary and Callahan as the secondary beneficiary. Decedent wrote at the bottom of the form

---

1. It is undisputed that decedent had known Callahan since he was a child and that Callahan worked part time for decedent for many years. It is not clear from the record why decedent initially chose him as her beneficiary. Callahan attests that decedent told him that she intended to make Jesse Lofgren, her

grandson, the beneficiary of at least some of her GMFCU accounts.

2. Although a copy of the disclosure statement is in the record, there is no evidence of how or when—or even if—decedent was given a copy of this document.

"Gale–Jesse first. In the event of his death 2nd Beneficiary Colin Callahan."

Lofgren attests that he witnessed a further disintegration in the relationship between decedent and Callahan in the spring of 2011, at which time decedent expressed her intent to remove Callahan entirely from her GMFCU accounts. Lofgren attests that he was present when decedent called GMFCU to request forms to make this change and that he opened the package containing three copies of a "Membership Change Form" that GMFCU sent to decedent as a result of that call. In May 2011, decedent submitted the completed form to GMFCU. The form has decedent's member number at the top and a check mark in a box specifying "add/remove payable on death (P.O.D.) beneficiary." The form designates Lofgren as decedent's sole beneficiary. Both decedent and Lofgren signed the form.

Decedent died in June 2012, at which time the IRA had a value of approximately $82,000. Shortly thereafter, Lofgren approached GMFCU, claiming to be the beneficiary of all of decedent's accounts, and he was informed that he was not a designated beneficiary of the IRA and that Callahan was still named as sole beneficiary of the IRA.

GMFCU filed an interpleader action, asking the district court to determine the rightful beneficiary of the IRA, stating that it had no interest in the outcome and asking to pay the IRA proceeds into the court and to be discharged of any liability. Lofgren answered and counterclaimed against GMFCU, alleging breach of contract, breach of fiduciary duty, and negligence. Lofgren submitted his affidavit and the affidavits of three of decedent's friends attesting to decedent's intent to make Lofgren the beneficiary of all of her GMFCU accounts.

Lofgren also attests that decedent provided him with copies of GMFCU's April 2012 account statement and a form explaining how a "stretch" IRA works. These documents include notes that Lofgren claims were written by decedent as she explained the various accounts to him so that he would understand what he would get when she died. The handwritten notes include Lofgren's first name and a dollar-amount total that includes the IRA. Lofgren attests that decedent was very concerned that he understood what he was inheriting and that he use it wisely, and he asserts that these notes are evidence of decedent's intent that he be the beneficiary of all of her GMFCU accounts, including the IRA.

GMFCU moved for summary judgment to dismiss Lofgren's counterclaims and sought authority for GMFCU to deposit a required-minimum IRA distribution and the net IRA proceeds with the court. The district court authorized deposit of the minimum distribution with the court, and the remaining IRA funds are being held in Callahan's attorney's trust account pending resolution of this appeal.

In its memorandum in support of summary judgment, GMFCU argued that because, under Minn.Stat. § 524.6–301 to .6–311 (2012) (Minnesota Uniform Transfer on Death Security Registration Act), IRA custodian's control beneficiary-designation procedures and decedent had not followed GMFCU's procedures for changing the IRA beneficiary, Callahan is the beneficiary of the IRA. GMFCU submitted an affidavit from Missy Mound, its vice president/chief operating officer, which (erroneously [3]) asserts that the custodial agreement informs members that

3. The record shows that this statement is not correct: the information about the beneficiary-change form is not contained in the custodial agreement.

an IRA beneficiary can be changed by completing a "Beneficiary Change Form," but also states that

> [i]t is [GMFCU]'s business practice to require that a[ ] traditional IRA account holder complete the "Designation of Beneficiary" section of the IRA Application and provide the IRA Application to [GMFCU] in order for a beneficiary designation to be changed.

Mound's affidavit stated that decedent never provided GMFCU with a new IRA application or a completed designation-of-beneficiary section for the purpose of changing the beneficiary designation of her IRA account.[4] Her affidavit also stated that the account-change and membership-change forms that decedent submitted had no effect on the IRA.

GMFCU also submitted an affidavit from its compliance officer, who stated that she frequently assisted decedent with her GMFCU accounts and that in the spring of 2012, she informed decedent that Lofgren was the designated beneficiary of her savings accounts and Callahan was the designated beneficiary of the IRA, to which decedent responded that she wanted to provide for both.

Callahan also moved for summary judgment, joining GMFCU's motion with respect to GMFCU's argument that Callahan is the rightful beneficiary of the IRA. In his supporting memorandum, Callahan argued that the decedent's subjective intent is not relevant and that because decedent did not comply with GMFCU's procedure for changing the IRA beneficiary and because the forms that decedent completed stated that they applied to the POD accounts, summary judgment should be entered awarding the IRA to him.

Lofgren opposed summary judgment and submitted two additional affidavits. Lofgren again asserted that GMFCU failed to provide decedent with the forms it now claims were required to change the IRA beneficiary, despite decedent's request for forms to change the beneficiary on all of her accounts. In his memorandum opposing summary judgment, Lofgren argued that decedent effectively changed the IRA beneficiary because she filled out the account-change form provided to her by GMFCU and indicated that it was to apply to all of her accounts. He argued that decedent had no reason to believe that her requested beneficiary designation would not be applied to the IRA or that the beneficiary changes had not been made to the IRA.

The district court granted GMFCU's and Callahan's motions, summarily dismissing Lofgren's counterclaims against GMFCU and holding that Callahan is the rightful beneficiary of the IRA. The district court concluded that (1) the Minnesota Uniform Transfer on Death Security Registration Act "bestows full discretion regarding form or procedure regarding beneficiaries upon the IRA custodian," (2) "the GMFCU Custodial Agreement plainly states that a beneficiary designation may only be changed by filling out a Beneficiary Change Form," and (3) "it is undisputed that [decedent] did not follow the clearly-defined procedure required by GMFCU," entitling GMFCU and Callahan to summary judgment.[5]

---

4. Neither GMFCU nor Callahan provided any evidence of how members were informed about GMFCU's business practice, which differs from the instructions for changing an IRA beneficiary in GMFCU's disclosure statement.

5. We note that the district court relied on Mound's erroneous information about where the information for changing a beneficiary is printed and ignored the fact that GMFCU did not follow that procedure but instead implemented an apparently undisclosed practice of requiring a new IRA application to change an

Lofgren wrote a letter to the district court, requesting permission to file a motion for reconsideration. The letter urged the district court to reconsider its position that the district court had no "ability to go beyond the beneficiary that was named in [GMFCU's] records" and cited interpleader cases giving effect to intended beneficiary changes in life-insurance policies, despite an insured's failure to comply strictly with beneficiary-change provisions contained in those policies. The letter also cited cases from other jurisdictions applying the same principles to IRAs. The district court denied leave to file a motion for reconsideration.

This appeal followed. Based on a stipulation between Lofgren and GMFCU, GMFCU has been dismissed by order of this court and is no longer a party to this action.

## ISSUES

I. Whether Lofgren has waived his equitable argument that the district court has authority to give effect to the intent of an IRA owner who substantially complies with IRA beneficiary-change procedures and/or who reasonably believes that she has complied with the custodian's beneficiary-change procedures, even though the procedures were not strictly followed and the IRA custodian did not change the IRA beneficiary?

II. If the argument is not waived, whether the district court erred by declining to consider evidence of the IRA owner's intent and acts to change an IRA beneficiary in determining whether there are material-fact questions, making summary judgment in favor of a named beneficiary inappropriate.

III. Whether Lofgren produced sufficient evidence to defeat summary judgment.

## ANALYSIS

**I. Lofgren argued to the district court that evidence of decedent IRA owners intent and acts to change the IRA beneficiary raise material questions of fact so as to preclude summary judgment for the named beneficiary, and the argument is not waived on appeal.**

Appellate courts generally will not consider matters not argued to and considered by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). On appeal, Lofgren labels the argument that he raised in the district court as constituting the "doctrine of substantial compliance," relying on insurance caselaw not presented to the district court and arguing that the doctrine should be applied in the context of IRA-beneficiary designations. Callahan argues that Lofgren's substantial-compliance argument is waived be-

IRA beneficiary. Nonetheless, it is undisputed that decedent did not strictly follow either

procedure described by Mound to change the IRA beneficiary.

cause it was not specifically raised in district court. We disagree.

The record shows that Lofgren consistently argued to the district court that there is evidence demonstrating decedent's intent and conduct to make him the sole beneficiary of her IRA account, as well as evidence that decedent had no reason to believe that the forms she sent to GMFCU were not adequate to effectuate this intent. Because Lofgren raised the substance of the substantial-compliance argument in district court, the issue on appeal is implicit in or closely akin to the arguments raised in the district court, and the issues have been fully briefed on appeal, the argument is not waived.

**II. The district court erred by failing to consider whether evidence of decedents intent and acts to effectuate an IRA-beneficiary change was sufficient to create a material-fact issue, making summary judgment in favor of the named beneficiary inappropriate in this case.**

■ A district court's grant of summary judgment is reviewed de novo to "determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 170 (Minn.2010). Evidence is considered in the light most favorable to the party against whom summary judgment was granted. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 76–77 (Minn.2002).

Lofgren argued to the district court that the evidence he presented showing that (1) decedent communicated her intent to change the IRA beneficiary to GMFCU; (2) decedent believed that she had filled out the appropriate forms to change the

IRA beneficiary; and (3) decedent had no reason to know that GMFCU had not changed the IRA beneficiary in accord with her instructions, created a material-fact issue, making summary judgment in favor of the named beneficiary inappropriate.

On appeal, Lofgren argues that this case is analogous to cases in which an insurer brings an interpleader action asking the district court to determine the rightful beneficiary of a life-insurance policy when there is evidence of an insured's intent to change the beneficiary coupled with substantial, but not strict, compliance with beneficiary-change procedures contained in the policy. *See Lemke v. Schwarz,* 286 N.W.2d 693, 695 (Minn.1979) (noting prior decision in which the supreme court made clear that a change of beneficiary may be properly effectuated in spite of failure of the insured to comply with each and every policy requirement); *Vanasek v. W. Bohemian Fraternal Ass'n,* 122 Minn. 273, 279, 142 N.W. 333, 336 (1913) (regarding as "generally recognized by the best courts" the three exceptions to the general rule that an insured is bound to change a beneficiary in the manner prescribed by the policy: (1) where the insurer has waived strict compliance; (2) where it is beyond the power of the insured to comply literally with the regulations; and (3) where the insured has pursued the course prescribed and has done all in his power to change the beneficiary, but dies before the change is made).

Lofgren argues that the same principles should be extended to cases involving the determination of the rightful beneficiary to an IRA, relying on cases from other jurisdictions that extend the same principles to

IRAs. *See LeBlanc v. Wells Fargo,* 134 Ohio St.3d 250, 981 N.E.2d 839, 847 (2012) (holding that "if an IRA custodian files an interpleader action, and the account owner's intent to change beneficiaries was clearly communicated to the custodian, the proceeds will be paid to the newly designated beneficiary rather than to the original beneficiary"); *In re Estate of Freeberg,* 130 Wash.App. 202, 122 P.3d 741, 744 (1974) (noting that "Washington permits courts, acting in equity, to enforce attempted changes in beneficiaries," and holding that an insured substantially complied with the IRA custodian's requirements to change a beneficiary by personally asking the custodian to make the change on his investment and IRA accounts).

We construe Lofgren's arguments to encompass all of the exceptions to strict compliance recognized in *Vanasek,* none of which are actually labeled "substantial compliance." 122 Minn. at 279, 142 N.W. at 335. The record demonstrates that Lofgren's argument to the district court was not only that decedent tried to comply with GMFCU's procedures by asking for the appropriate forms, but also that once decedent completed the forms provided and informed GMFCU of her intent to change the beneficiary on *all* of her accounts held by GMFCU, she reasonably believed that she had complied with GMFCU's requirements and had no reason to believe that the IRA beneficiary had not been changed. This is not only a substantial-compliance argument, but it is an argument identical to the clearly-expressed-intent argument accepted by the Ohio Supreme Court as a basis for equitable relief. *LeBlanc,* 981 N.E.2d at 847.

Callahan argues that the district court correctly held that the Minnesota Uniform Transfer on Death Security Registration Act bestows on GMFCU full discretion to determine the form and procedure re-quired to change an IRA beneficiary, and that there is no precedent for applying the doctrine of substantial compliance in an interpleader action involving the determination of the rightful beneficiary of an IRA account. Callahan notes that Minnesota has not yet addressed the issue of whether there are any exceptions to strict compliance with an IRA custodian's procedures for IRA-beneficiary change. And he advances only a policy argument—that requiring strict compliance with an IRA custodian's procedures promotes certainty—to argue that Minnesota should not recognize any exceptions to strict compliance in the context of an IRA-beneficiary change. Callahan equates IRAs to accounts held in joint tenancy, but because evidence of intent is relevant in determining the effect of an account held in joint tenancy, this argument is not persuasive. *See Miller v. Daniels,* 520 N.W.2d 769 (Minn.App.1994) (providing that, absent clear and convincing evidence of a different intent, a joint tenancy created by statute in a signature-card account entitled the surviving account holder to the funds in the account).

Minn.Stat. § 524.6–308 (2012) gives discretion to the IRA custodian to establish the procedures for designating and changing beneficiaries for IRA accounts and explicitly provides protection to custodian's acting in good faith and in accordance with the law. This is the same discretion extended, for the same purpose, to life-insurance companies. *See Lemke,* 286 N.W.2d at 696 (holding that "where an insured has clearly and unambiguously demonstrated an intent to change the beneficiary on a life insurance policy, this intent should be given effect unless prejudice to the insurer would result"); *Brown v. Agin,* 260 Minn. 104, 109, 109 N.W.2d 147, 150 (1961) (stating that beneficiary-changing provisions in insurance policies "are for the protection of the insurer, and where, as here, the insurance company has deposited the pro-

ceeds of the policy to be paid in accordance with the order of the court, it has waived any defense it might have to the claim of either party.... The rule generally applied is that equity regards that as done which ought to have been done.").

Here, GMFCU stated in its interpleader complaint that it "has no claim upon the IRA account proceeds and is ready and willing to deposit the proceeds with the court in order to allow the [i]nterpleader [d]efendants to settle between themselves and present to the [c]ourt their alleged claims to the IRA account proceeds."[6] Lofgren's counterclaims against GMFCU have been dismissed and GMFCU has been dismissed from this action such that GMFCU is no longer in a position to assert strict compliance with its IRA-beneficiary-designation practices, and the district court may apply equity to determine the rightful beneficiary of decedent's IRA account.

We conclude that the Ohio Supreme Court's decision in *LeBlanc*, applying equitable considerations to a controversy between a named beneficiary and an intended beneficiary, is highly persuasive and is consistent with the approach of our supreme court in similar determinations in the context of life insurance. 981 N.E.2d at 847. The supreme court has recognized exceptions beyond substantial compliance and has focused on "whether the insured intended to change the beneficiary and ... whether he *took affirmative action or otherwise did substantially all that he could do to demonstrate that intention* without regard to whether he complied with the change-of-beneficiary provisions in the policy." *Agin*, 260 Minn. at 109, 109 N.W.2d at 151 (emphasis added).

We hold, therefore, that when the custodian of an individual retirement account (IRA) brings an interpleader action to permit the district court to determine a controversy between parties who each claim to be the sole beneficiary of an IRA, the district court may apply equitable principles to determine that the named beneficiary is not the rightful beneficiary, if the evidence warrants such a determination. The district court erred by concluding that it did not have authority to consider this evidence.

### III. Sufficiency of the evidence to defeat summary judgment is beyond the scope of this appeal.

Callahan argues that even if equitable principles apply, Lofgren did not present sufficient admissible evidence to avoid summary judgment in this case. But because the district court declined to consider *any* of the evidence Lofgren offered about decedent's (1) intent; (2) communication of that intent to GMFCU; and (3) reasonable inference, under all of the circumstances of this case, that decedent believed that she had, in fact, done all that she could do to change the IRA beneficiary, the district court has not ruled on the sufficiency of that evidence to defeat summary judgment. Accordingly, we decline to address the issue in this appeal. *Thiele*, 425 N.W.2d at 582.

### DECISION

Because the district court erred by concluding that it did not have the authority to apply equity to determine the rightful beneficiary of decedent's IRA account, we reverse summary judgment granted to the named beneficiary and remand to the dis-

---

6. Callahan argues that Lofgren's counterclaim against GMFCU is proof that GMFCU is not free from liability and did not waive its defenses. While GMFCU had standing to argue certain defenses at the district-court level in response to Lofgren's counterclaim, it is no longer a party to this action.

trict court for further proceedings consistent with this opinion.

**Reversed and remanded.**