# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DOROTHY BLANSFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 9435-VCP |
| | ) | |
| ALUMNI ASSOCIATION OF ARIZONA | ) | |
| STATE UNIVERSITY, ALUMNI | ) | |
| ASSOCIATION OF TEMPLE | ) | |
| UNIVERSITY and ROMAN CATHOLIC | ) | |
| DIOCESE OF WILMINGTON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: April 20, 2015
Date Decided: July 31, 2015

Jeffrey M. Weiner, Esq., LAW OFFICES OF JEFFREY M. WEINER, P.A., Wilmington, Delaware; *Attorneys for Plaintiff, Dorothy Blansfield.*

W. Donald Sparks, II, Esq., Chad M. Shandler, Esq., Janice M. Matier, Esq., RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Attorneys for Defendants Arizona State University Alumni Association and Temple University Alumni Association.*

Anthony G. Flynn, Esq., Jennifer M. Kinkus, Esq., YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; *Attorneys for Defendant Catholic Diocese of Wilmington, Inc.*

**PARSONS, Vice Chancellor.**

This is a dispute about who is entitled to the proceeds of an individual retirement account or "IRA" owned by the decedent. Prior to his death, the decedent allegedly attempted to name the plaintiff as the new beneficiary of this account by requesting a copy of the requisite change of beneficiary form from the bank. He did not sign or return the form, however, and died roughly three months later. The defendants, who are residual beneficiaries named in the decedent's will, contend that the IRA change of beneficiary form was ineffective because the decedent did not comply with the requisite formalities.

After limited discovery, the defendants moved for summary judgment. The plaintiff asserts that the defendants are not entitled to such judgment, contending that the unsigned change of beneficiary form was effective to change the IRA beneficiary under either the common law doctrine of substantial compliance or the "clearly expressed intent" standard. The plaintiff also argues that there are disputed issues of material fact. In this regard, she avers that the decedent was incapacitated from shortly after the time he requested the change of beneficiary form until his death, and therefore could not have signed and returned the form, but that his intent to change the IRA beneficiary nevertheless should be honored.

As discussed herein, I deny the defendants' motion for summary judgment, because material issues of fact remain in dispute.

# I. BACKGROUND[1]

## A. Parties

Plaintiff, Dorothy Blansfield, was a cousin of the decedent, John J. Egyed, Jr. (the "Decedent"). Blansfield is one of the alternative residual beneficiaries designated by Decedent in his last will and testament. Defendants, the Alumni Association of Arizona State University ("Arizona State"), the Alumni Association of Temple University ("Temple"), and the Roman Catholic Diocese of Wilmington (the "Diocese") (collectively, the "Defendants"), are charities named as alternative residuary beneficiaries of Decedent's estate.

## B. Facts

### 1. Natural objects of Decedent's bounty

Decedent never married nor had any children. His family apparently included only his parents and his cousin, Blansfield. Decedent's father died on April 8, 1984, and his mother died on November 20, 2007. After his mother died, Decedent allegedly became like a member of Blansfield's immediate family. Blansfield avers that, during that period, Decedent spent almost all holidays with Blansfield and her family, took vacations

---

[1] The facts recited herein are drawn from affidavits and exhibits attached to Defendants' Joint Opening Brief in Support of their Motion for Summary Judgment ("Defs.' Opening Br."), and Plaintiff's Answering Brief in Opposition to the motion ("Pl.'s Answering Br.").

with her family at the beach, and visited her mother, *i.e.*, Decedent's aunt, when she was in a nursing home.[2] Decedent apparently considered Blansfield to be like a sister.[3]

### 2. Decedent's health problems

In April 2010, Egyed became ill. Blansfield asserts that she convinced him to see her doctor, who later examined Decedent and had him admitted to the hospital, where he was diagnosed with kidney failure and hospitalized for more than one week. With Blansfield's assistance, Egyed explored kidney transplant opportunities. Blansfield avers that, in order to determine Egyed's eligibility for transplant, she traveled with him to the University of Kentucky Hospital for additional tests. On April 24, 2013, Decedent underwent kidney transplant surgery in Kentucky. Blansfield and her husband drove there the following day and stayed for approximately twenty days to care for Egyed.

A few months following the surgery, Decedent started experiencing "low grade fevers, malaise and … altered mental status." He ultimately was admitted to the emergency room at the Hospital of the University of Pennsylvania where he was diagnosed with post-transplant lymphoproliferative disease, which is cancerous, on August 15, 2013.[4] Blansfield and her husband again stayed near the hospital to provide care for Decedent. The hospital's records revealed that Egyed was "confused,"

---

[2]     Compl. ¶ 10; Blansfield Aff. ¶ 2.

[3]     Compl. ¶ 5.

[4]     Pl.'s Answering Br. App. 238.

3

cognitively impaired, "disoriented," with his speech garbled, and that he exhibited poor reasoning, a lack of clarity, and forgetfulness.[5]

Decedent was discharged on September 3, 2013. He continued to suffer from various physical ailments. Egyed was readmitted to the hospital on October 20, 2013 and diagnosed with an infection. He was released on October 25, 2013, but was readmitted on October 28 and thereafter put on life support. He died on November 12, 2013. Decedent's medical records for both hospitalization periods indicate that his cognitive status was impaired, causing him to be intubated, deeply sedated, and restrained.[6]

### 3. Decedent's Last Will and Testament

Decedent executed his Last Will and Testament on September 16, 1989 (the "Will").[7] He bequeathed certain articles of his personal tangible property and devised "all the rest, residue and remainder of his property and estate" to his mother. The Will further provided that, if Decedent's mother predeceased him, the remainder of his estate then would be distributed to alternative beneficiaries as follows: a general bequest in the amount of $50,000 to Blansfield, with the remaining balance to the three Defendant charitable organizations in varying percentages, *i.e.*, 60% to Arizona State, 30% to Temple, and 10% to the Diocese. Furthermore, Decedent appointed Blansfield as his Executrix. Blansfield alleges that, after Egyed received his kidney transplant, he advised

---

[5]     *Id.* at 62-66.

[6]     *Id*. at 181-82.

[7]     Sparks Aff. Ex. C (the Will).

4

her on one or more occasions that he intended to change his Will. Because Decedent apparently was a "private person," however, he did not tell Blansfield how he intended to modify his Will other than expressing the thought that he "had given enough to the Alumni Associations."[8]

Blansfield also submitted evidence that over the last few years, Decedent gradually transferred portions of his property interests to her, or at least accorded her control over those interests. Some illustrative examples of Decedent's transfers in this regard are: (1) in 2007, Egyed executed an Advanced Healthcare Directive and appointed Blansfield as his power of attorney for healthcare; (2) in 2011, he named Blansfield as a co-owner and an authorized signer on his checking account at PNC Bank; (3) in 2012, Decedent named Blansfield as a co-owner and authorized signer on his banking account and Absolute Money Market Account at WSFS Bank, and authorized a debit card for her to use for his WSFS Plus Free Interest Account; (4) on June 26, 2012, Egyed designated Blansfield as a co-lessee on his safe deposit box at PNC Bank; (5) on July 9, 2012, he retitled his CD account with Bank of America as ITF or "In Trust For" Blansfield; and (6) on February 22, 2013, unbeknownst to Blansfield, he designated her as a beneficiary to his Natiowide Annuity.[9]

---

[8]     Blansfield Aff. ¶ 10.

[9]     *Id.* ¶¶ 4-8, 10.

## 4. Decedent's Individual Retirement Account

At the time of his death, Decedent owned, among other assets, an IRA worth approximately $1.3 million that was administered by PNC Investments ("PNC").[10] Thomas J. Cooney, the PNC broker for the IRA, testified that at the time of Decedent's death, the PNC records identified Decedent's mother, Marion Egyed, as the sole beneficiary of the IRA.[11]

According to Blansfield, however, the evidence suggests that Decedent contacted PNC shortly before July 25, 2013, and intended to substitute her as the new beneficiary of the IRA. A few days after Decedent's death, Blansfield discovered a letter from a PNC representative, Julie A. Iocono, along with a change of beneficiary designation form on Decedent's desk at his residence.[12] The letter from Iocono, dated July 25, 2013, advised Decedent to sign and return the attached change of beneficiary designation form (the "Form"). The Form listed Dorothy Blansfield as the new and sole beneficiary of the IRA.[13] Blansfield's name, date of birth and social security number were typed on the Form. Iocono could not recall, however, how she obtained that information, nor could she remember sending the letter to Decedent.[14]

---

[10]     Compl. ¶ 16.

[11]     Sparks Aff. Ex. D (Cooney Dep. 16).

[12]     Compl. ¶ 25.

[13]     Pl.'s Answering Br. App. 41.

[14]     Sparks Aff. Ex. E (Iocono Dep. 15).

6

The Form provides that any change in beneficiary becomes effective when the Form is received and accepted by NFS, an agent for PNC, and "will remain in effect until NFS receives and accepts another designation with a later date."[15] Decedent never signed the Form or mailed it to PNC.

## C.       Procedural History

On March 11, 2014, Blansfield commenced this action, seeking a declaration that she is the beneficiary of Decedent's PNC IRA. On April 30, 2014, all Defendants jointly filed their Answers to the Complaint. Thereafter, the parties engaged in limited discovery. On December 22, 2014, all Defendants filed a joint motion for summary judgment pursuant to Court of Chancery Rule 56 (the "Motion"). After full briefing, I heard argument on the Motion on April 20, 2015.

## D.       Parties' Contentions

Blansfield asserts that she is entitled to be the sole beneficiary of Decedent's IRA under the doctrine of substantial compliance. She argues that Decedent intended to designate her as the new beneficiary by contacting PNC and requesting a change of beneficiary designation form, and that although Egyed failed to comply with the strict requirements of signing and returning the Form, he did everything he reasonably could have done under the circumstances to formalize this change. Blansfield further contends that this Court should adopt a different standard in the circumstances of this case—*i.e.*,

---

[15]     Pl.'s Answering Br. App. 43.

the clearly expressed intent standard. Under that standard, Blansfield asserts that it is even more clear that Defendants' Motion should be denied.

Defendants contend that the beneficiary designation form was not effective because Decedent never signed or returned the Form to PNC. They therefore assert that they are entitled to judgment in their favor, and that proceeds of the IRA should be distributed in accordance with the beneficiary designation form that PNC had on file, which named Decedent's mother as the beneficiary. In that circumstance, because Decedent's mother predeceased him, the IRA proceeds would default to his estate and be distributed pursuant to his Will, under which Defendants are named as alternative beneficiaries and entitled to receive Decedent's residuary estate. Defendants make that argument under the substantial compliance test, which they contend is the correct legal standard in this situation. They further urge this Court to reject as a matter of law the less onerous clearly expressed intent standard for which Blansfield argues.

## II.     ANALYSIS

### A.     Legal Standard

"Summary judgment is granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[16] When considering a motion for summary judgment, the evidence

---

[16] *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).

8

and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[17] Summary judgment will be denied when the legal question presented needs to be assessed in the "more highly textured factual setting of a trial."[18] The Court also "maintains the discretion to deny summary judgment if it decides that a more thorough development of the record would clarify the law or its application."[19]

## B.     Applicable Legal Principles

In the context of beneficiary designations, Delaware recognizes the common law doctrine of substantial compliance.  Under that doctrine, an intended change of beneficiary designation can be given effect "'despite a failure to comply strictly with the formalities usually required for such a change,'" if the account owner intended for the change of beneficiary designation to be given effect, and the account owner has done all that is reasonably possible or necessary for him to change the beneficiary.[20] The purpose of the substantial compliance doctrine is to relax the requirement of strict compliance in

---

[17]     *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).

[18]     *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 n.3 (Del. Ch. 1987) (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 257 (1948)).

[19]     *Tunnell v. Stokley*, 2006 WL 452780, at *2 (Del. Ch. Feb. 15, 2006) (quoting *Cooke v. Oolie,* 2000 WL 710199, at *11 (Del. Ch. May 24, 2000)).

[20]     *Travelers Life & Annuity Co. v. Desiderio*, 2007 WL 2019795, at *2 (Del. Ch. July 3, 2007) (quoting *Greene v. Conn. Mut. Life Ins. Co.*, 1977 WL 5189, at *3 (Del. Ch. May 25, 1977)).

9

order to effectuate a decedent's intent, in recognition of the fact that "strict enforcement of the requirement for a duly processed writing may work an inequity."[21]

I note that, in opposing Defendants' motion, one argument Plaintiff raised was that I should employ a less onerous standard than the substantial compliance test, such as the "clearly expressed intent" test that other states apparently have adopted in analogous circumstances.[22] As discussed *infra*, I find that Defendants are not entitled to summary judgment under either the substantial compliance standard that they advance or the more plaintiff-friendly "clearly expressed intent" standard.[23] Thus, I do not reach the legal question of whether Delaware recognizes or should adopt the clearly expressed intent standard.

## C.  Summary Judgment is Not Appropriate Here

The substantive issue before the Court is whether Decedent effectively changed the beneficiary on his IRA to Blansfield. Defendants argue that, based on the undisputed facts of this case, the answer is "no," because the terms of the beneficiary designation form made it clear that a change in beneficiary is not effective until PNC receives the

---

[21]  *Id.*

[22]  PAB 27-32 (citing, *inter alia*, *LeBlanc v. Wells Fargo Advisors, L.L.C.*, 981 N.E.2d 839, 847 (Ohio 2012)).

[23]  This does not mean, however, that Blansfield might be entitled to summary judgment, although she has not moved for it, on either of those standards. The reason is that both the substantial compliance standard and the clearly expressed intent standard require proof that the decedent intended to name a new beneficiary. As discussed *infra*, there are genuine issues of material fact on that question that preclude summary judgment for Plaintiff or Defendants.

10

signed beneficiary designation form, and, because Decedent did not sign or return the Form.

I disagree. For the following reasons, I conclude that Blansfield has met her burden of showing that an issue of material fact exists, and I therefore deny Defendants' motion for summary judgment. In particular, two material facts remain at issue in this case: (1) whether Decedent intended to change his IRA beneficiary to Blansfield; and (2) whether Decedent did everything he reasonably could have done to effectuate that change under the circumstances.

**1.      Whether Decedent had the requisite intent**

It is undisputed that Decedent never signed or returned a beneficiary designation form as seemingly required. Days after Decedent's death, however, the Form designating Blansfield as the new beneficiary was discovered. Blansfield's name, date of birth, and social security number were typed on the Form, which was accompanied by a letter sent by PNC. It is possible that someone other than Decedent called PNC and provided Blansfield's information to PNC, but Iocono could not recall how she obtained that information. It is also reasonable to infer, however, that Decedent himself called to request a change of beneficiary and provided the information regarding Blansfield. If so, that would support a finding that Decedent did intend to effect the change of beneficiary in favor of Blansfield. At this procedural stage, Plaintiff is entitled to have the Court draw such a reasonable inference in her favor.

Furthermore, the inference of Decedent's intent to leave greater portions of his estate to Blansfield might be supported by the interactions he had with Blansfield over

11

the years. From early 2011 to the time of his death, Decedent repeatedly transferred other non-probate assets he owned to Blansfield, such as naming her as a co-owner and an authorized signer of his various checking accounts, designating her as a co-lessee on his safe deposit box, naming her as ITF for his CD account, and naming her as the beneficiary of his annuity account. These actions arguably support an inference that Decedent also intended to name Blansfield as the beneficiary of his IRA account. Admittedly, another inference that could be drawn from Decedent's actions in this regard is that he believed he had already done enough for Blansfield without also giving her the entire proceeds of his IRA. On a motion for summary judgment, however, I must review the evidence in the light most favorable to the nonmoving party. Drawing all reasonable inferences in favor of Blansfield, I conclude that there is a genuine dispute about whether Decedent intended to designate Blansfield as the beneficiary of his IRA.

## 2. Whether Decedent substantially complied

Defendants also assert that no factual disputes exist as to whether Decedent did all that was "reasonably possible or necessary" for him to effectively change the beneficiary of the IRA. In particular, Defendants argue that all Decedent had to do was to sign and date the change of beneficiary form and mail it back to PNC. Defendants further assert that Decedent had many opportunities to complete this simple task from the time he received the letter on or about July 25, 2013, until his death over three months later. Blansfield counters that Decedent was disoriented and extremely ill during this time period and was in and out of the hospital, effectively making it impossible for him to sign and return the beneficiary designation form.

12

Plaintiff primarily relies on this Court's decision in *Travelers Life & Annuity Co. v. Desiderio* as support for her position.[24] In that case, the decedent contacted his life insurance agent to change the beneficiary of his annuity contract. He left a voicemail stating his intent but died the following day, before he could execute the necessary paperwork.[25] This Court applied the doctrine of substantial compliance and determined that, by making the call and leaving the voicemail, the decedent demonstrated his intent to change the beneficiary and that he did all he reasonably could under the circumstances to effectuate that change.

One distinction between *Travelers Life* and this case is that, here, the beneficiary designation form was sent to Decedent on July 25, 2013, and he died on November 12, 2013. Thus, he had more than three months to comply with PNC's requirement of signing and returning the Form, but he failed to do so. There is evidence in the record, however, that Decedent was disoriented and extremely ill during much of this time, which could have prevented him from signing the Form and returning it to PNC. According to Decedent's hospitalization record, he was admitted to the hospital on August 15, 2013 due to an altered mental status.[26] His medical records show that Decedent was confused, cognitively impaired, and generally disoriented. Decedent was readmitted on October 20, 2013, and again on October 28. He then was put on life

---

[24] 2007 WL 2019795 (Del. Ch. July 3, 2007).

[25] *Id.* at *2.

[26] Compl. ¶ 18.

support before dying on November 12. The records from these hospitalizations again indicate that he was confused and forgetful and that his cognitive status required him to be sedated and restrained.[27]

Thus, there is evidence that Decedent suffered from disorientation and physical or cognitive impairments during significant portions of the time period between his receipt of the change of beneficiary form in late July 2013 and his death in November. But, the record is not clear as to whether Decedent was incapacitated continuously during that period, or only intermittently. A more developed factual record may lead the Court to find that Blansfield has failed to satisfy her burden of proof on this aspect of the substantial compliance test. Granting a motion for summary judgment in favor of Defendants, however, would be improper, because there is a genuine issue of material fact regarding Decedent's mental status, which could have prevented him from complying with PNC's requirements for changing the beneficiary designation on his IRA. Based on the existence of that dispute and the dispute discussed above regarding Decedent's intent, I must deny Defendants' Motion.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied.

**IT IS SO ORDERED**.

---

[27]    Pl.'s Answering Br. App. 181-82.

14