[Cite as *Filo v. Filo*, 2021-Ohio-413.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| TAMMY FILO, | : | |
| Appellant and Cross-Appellee, | : | CASE NOS. CA2020-01-003<br>CA2020-03-009 |
| | : | |
| - vs - | : | O P I N I O N<br>2/16/2021 |
| | : | |
| TERRY FILO, AS TRUSTEE,<br>TERRY FILO, INDIVIDUALLY | : | |
| | : | |
| Appellee and Cross-Appellant. | | |


APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 20164003


Hickman & Lowder Co., L.P.A., Blaine P. Brockman, Franklin J. Hickman, 1300 East Ninth Street, Suite 1020, Cleveland, Ohio 44114, for appellant and cross appellee

Reminger Co., L.P.A., Clifford C. Masch, Adam M. Fried, Adriann McGee, Acacia Perko, 200 Civic Center Drive, Suite 800, Columbus, Ohio 43215, for appellee and cross appellant


**PIPER, P.J.**

{¶ 1} Appellant, Tammy Filo, appeals a judgment in the Madison County Court of Common Pleas, Probate Division, relating to a trust created by her father, Elmer Filo.

{¶ 2} Elmer and Marilynn Filo were married and had a daughter, Tammy, and a son, Terry. The Filo family lived on and operated a farm in Trotwood, Ohio. Eventually, Elmer and Marilynn separated and the children, who were caught in the middle of the

separation, stopped speaking to one other. Initially, Terry also stopped speaking with Elmer. During this time, Tammy spent time with Elmer and assisted him in a variety of ways.

{¶ 3} While still separated, Marilynn passed away and by 2015, Elmer's health had declined. In May 2015, Elmer executed a financial power of attorney granting co-agency to his long-time friend, Tom Stonecipher, who was also his attorney, and Tammy. Elmer also appointed Tammy his health care power of attorney.

{¶ 4} Elmer, who had several medical issues, accidentally overdosed on his medication three times, and was hospitalized for several days upon each instance. Elmer was released from the hospital and returned to the farm on the first two occasions, but was released to an assisted living facility on the third occasion at the behest of his doctors and social workers. Elmer, who believed he was capable of self-care, was enraged that he was not permitted to return to the farm. He blamed Tammy for his being at the facility and also ended his professional and personal relationship with Stonecipher when he did not secure Elmer's release from the facility.

{¶ 5} While Elmer was in the facility, Terry discovered that the crops had not been planted on the family farm and that work needed to be done there. Terry located Elmer at the facility and the two reconciled. Elmer told Terry that Tammy was keeping him in the facility against his will and that he wanted to sue her. Terry secured a new attorney to represent Elmer who assisted Elmer in executing a general durable power of attorney to Terry, and a revocation of the power of attorney naming Stonecipher and Tammy, as well as advance directives to Terry. Among several documents, Elmer also executed an irrevocable trust, a pour-over will to replace a former version of his will, and an operating agreement for the farm. Elmer also executed documents to establish a corporation for

management of the family farm, and also assigned various property to fund the trust.

{¶ 6} A few days after Elmer executed these documents, Terry removed Elmer from the facility and took him to live in his home in Indiana for several weeks. After an additional hospital stay for other health problems, Terry returned Elmer to the family farm to live alone. Thereafter, using his new attorney, Elmer executed a second set of documents, including a power of appointment that removed Tammy's beneficial interest in the trust. Less than two months later, Elmer passed away.

{¶ 7} Tammy filed Elmer's original will in the probate court without knowledge that Elmer had created the trust and created a new will. Terry then filed the newly-executed documents with the probate court. Tammy filed a preliminary injunction to stay execution of the trust and new will documents, which the probate court granted. However, the injunction was lifted upon the probate court's review of the trust and more recent documents. The more recent documents became the governing instructions for Elmer's estate.

{¶ 8} Tammy commenced a declaratory judgment action against Terry in the probate court, alleging that Elmer lacked mental capacity to execute the power of appointment, that Elmer was subject to undue influence when executing the power of appointment, and that Terry breached his fiduciary duties as trustee. The complaint alleged the lack of mental capacity and undue influence allegations regarding all of the documents establishing a corporation as well as the assignments of property to the trust.

{¶ 9} After a lengthy trial, a jury returned a verdict in favor of Terry on the lack of mental capacity and undue influence claims, and in favor of Tammy on the breach of trustee duties claim. The probate court imposed no damages for Terry's breach of duty. Tammy now appeals the probate court's decision, raising the following assignments of error.

Because Tammy's first two assignments of error are interrelated, we will address them together.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT TESTAMENTARY CAPACITY IS THE STANDARD OF REVIEW FOR EXERCISE OF A POWER OF APPOINTMENT IN AN IRREVOCABLE TRUST.

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE TRIAL COURT ERRED IN ITS PROCEDURE FOR RULING ON THE BURDEN SHIFT WHEN PLAINTIFF-APPELLANT ASSERTED UNDUE INFLUENCE.

{¶ 14} In her first two assignments of error, Tammy argues that the probate court gave improper jury instructions.

{¶ 15} "When considering the appropriateness of a jury instruction, or when a specific jury instruction is in dispute, a reviewing court must examine the instructions as a whole." *Enderle v. Zettler*, 12th Dist. Butler No. CA2005-11-484, 2006 Ohio 4326, ¶ 36. "If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled." *Withers v. Mercy Hosp. of Fairfield*, 12th Dist. Butler No. CA2010-02-033, 2010-Ohio-6431, ¶ 17. Alleged misstatements or ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party. *Silver v. Jewish Home of Cincinnati*, 2010-Ohio-5314, 190 Ohio App.3d 549 (12th Dist.).

**I. Capacity**

{¶ 16} Tammy first argues that the probate court's jury instructions regarding whether Elmer had capacity to execute his power of appointment were improper because

they included law specific to testamentary capacity rather than capacity to contract. The power of appointment, which is testamentary in nature, impacted the disposition of Elmer's assets upon his death. Elmer used his power of appointment to effectively disinherit Tammy.

{¶ 17} The test for mental capacity to enter a contract is whether the person understood the nature of the transaction and the effects of her or his own actions. *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 658 (8th Dist.1993). The test for testamentary capacity is whether the person has sufficient mind and memory (1) to understand the nature of the business in which he or she is engaged, (2) to comprehend generally the nature and extent of his or her property, (3) to hold in his or her mind the names and identity of those who have natural claims upon his or her bounty, and (4) to be able to appreciate his or her relation to the members of his or her family. *In re Estate of Ludwick*, 12th Dist. Fayette No. CA98-11-020, 1999 Ohio App. LEXIS 2343 (May 24, 1999), citing *Niemes v. Niemes*, 97 Ohio St. 145 (1917); *see also Flowers v. Siefer*, 6th Dist. Lucas No. L-16-1002, 2017-Ohio-1310.[1]

{¶ 18} Ohio courts have recognized that "the test of testamentary capacity can also be used as a standard for mental capacity to execute a beneficiary designation." *Stanek v. Stanek*, 2d Dist. Greene No. 2018-CA-39, 2019-Ohio-2841, ¶ 38, quoting *Flowers* at ¶ 84. For example, courts have applied the testamentary capacity test to determine whether a decedent possessed the mental capacity to create a contract for a payable-on-death bank account because that type of account provides a way for a person to make dispositions like

---

1. The probate court's instructions, which followed the Ohio Jury Instructions, differed slightly from the standard cited in *In re Estate of Ludwick*, but contain the same legal principles. The probate court gave the following instruction, "the law requires: A, that the individual understand that he is making a will to dispose of his property at death; B, that the individual understands generally the nature and extent of his property; C, that the individual have in his mind the names and identity of those persons who are his relatives, next of kin, or the natural objects of his bounty and understand his relationship to them."

those made under a will. *Giurbino* at 658; *Davis v. Marshall*, 10th Dist. Franklin No. 94APE02-158, 1994 Ohio App. LEXIS 3538 (Aug. 4, 1994); *see also Schiavoni v. Roy*, 9th Dist. Medina No. 11CA0108-M, 2012-Ohio-4435, ¶ 17 (applying the same reasoning to annuities); and *Webb v. Betty S. Anderson Children Trust*, 1st Dist. Hamilton No. C-190600, 2020-Ohio-4975, ¶ 39 (reaching the same conclusion regarding designation of a beneficiary for an IRA using either the contract or testamentary capacity test because the tests essentially produce the same results).

{¶ 19} The jury determined that Elmer had testamentary capacity to execute his power of appointment, which by means of the tests involved, also indicated that Elmer had capacity to contract. As noted above, the test for mental capacity to enter a contract requires a determination that the person understood the nature of the transaction and the effects of his or her own actions. The jury was instructed to determine whether Elmer (1) understood that he was making a will to dispose of property at his death, (2) understood the nature and extent of his property, and (3) understood his familial relations. The same evidence would support a determination using either test specific to the transaction, (here a pour-over will, trust, and power of appointment), as well as the effects of his action, (how his property would be divided among his recognized heirs). Thus, the end result is the same regardless of whether the jury was given instructions on testamentary or contractual capacity.

{¶ 20} If anything, the testamentary capacity test required the jury to make additional and specific determinations before finding that Elmer had capacity to execute his power of appointment. Thus, Tammy cannot demonstrate she was prejudiced by the court using a more involved test than the contractual capacity test.

## II. Undue Influence

{¶ 21} Tammy next argues that the probate court's jury instructions were improper because they did not include the relevant presumption specific to undue influence and the burden-shifting aspect of the law.

{¶ 22} When a gift is made between parties occupying a fiduciary, confidential, or dependent relationship, a presumption arises that such gift is void. *In re Guardianship of Worrall*, 12th Dist. Butler No. CA93-10-201, 1994 Ohio App. LEXIS 1515, *4 (Apr. 11, 1994). However, this presumption is not conclusive and may be rebutted with proof that no deceit or undue influence was used, and that the donor acted voluntarily and with a full understanding of his or her act and its consequences. *Id.*

{¶ 23} "A presumption is dispositive solely where *neither* party introduces substantial credible evidence regarding the fact to be presumed. Conversely, when either party introduces substantial credible evidence tending to prove a fact which would otherwise be presumed, the presumption either never arises or it disappears." (Emphasis sic.) *Ayers v. Woodard*, 166 Ohio St. 138, 144 (1957). Thus, if there is "evidence of a sufficient quality offered by [the party] to rebut the presumption of undue influence arising as a result of an alleged confidential or fiduciary relationship, no jury instruction upon such presumption [is] required." *Rheinscheld v. McKinley*, 4th Dist. Hocking No. 453, 1988 Ohio App. LEXIS 240, *14-15 (Jan. 27, 1988). A trial court is justified in not giving an instruction on a presumption should such an instruction mislead the jury. *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, ¶ 39 (8th Dist.). The record indicates that the existence of the fiduciary relationship between Terry and Elmer raised a presumption that the gifts to Terry were void. However, during trial, Terry presented substantial credible evidence that Elmer made each of his decisions free from undue influence to overcome the presumption. This evidence included the testimony of Elmer's second attorney, which the probate court found

"highly credible." Elmer's second attorney testified regarding the specific steps he took to guard against undue influence, and gave detailed descriptions of the meetings he had with Elmer and how Elmer behaved in regard to the decisions he made. Terry also presented evidence from experts regarding Elmer's state of mind and his cognitive abilities during the timeframe of the changes Elmer made to his estate plan.

{¶ 24} Tammy argues that the jury, not the probate court, should have made the decision as to whether the presumption was overcome by Terry's evidence and whether the evidence submitted was credible. However, the trial court is the gatekeeper of how a jury is to be instructed, and what law is properly included in the instructions based upon the evidence produced at trial. Once Terry produced sufficient credible evidence to overcome the presumption, such presumption became a legal nullity and any jury instruction on it could have mislead the jury. Thus, the probate court correctly excluded a jury instruction on the presumption.

{¶ 25} After reviewing the record, we find that the probate court did not err in fashioning the jury instructions. As such, Tammy's first and second assignments of error are overruled.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ERRED IN RULING ON DAMAGES ARISING FROM TERRY FILO'S BREACH OF FIDUCIARY DUTY.

{¶ 28} Tammy argues in her third assignment of error that the jury should have decided the issue of damages rather than the trial court.

{¶ 29} It is axiomatic that a litigant's failure to raise an issue in the trial court waives the party's right to raise that issue on appeal. *Shover v. Cordis Corp.*, 61 Ohio St.3d 213, 220 (1991). Thus, this court will not consider any error a party failed to bring to the trial

court's attention at a time when the trial court could have avoided or corrected the error. *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210 (1982).

{¶ 30} According to the record, the jury's verdicts were read into the record at the conclusion of jury deliberations. The jury found for Terry on the first two causes of action alleging undue influence and lack of capacity, and against him on the third alleging breach of fiduciary duties. Once the probate court thanked the jury for its service, it discharged the jury without objection from either party. The probate court then spoke to the parties about the possibility of awarding damages regarding the third cause of action. At no point, however, did Tammy object to the probate court's determination of damages or argue that the jury was the proper body to award damages.

{¶ 31} Moreover, the record indicates that Tammy's counsel specifically asked the probate court for "time to provide some information to the Court * * * so the Court can make findings as to just what the range of possible damages could be." The probate court took the matter under advisement, and at no point did Tammy argue that she was entitled to have a jury determine damages. Thus, Tammy has forfeited this issue on appeal.

{¶ 32} Tammy asserts that we should engage in a plain error review of the issue. Plain error in a civil case is an error that "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. The doctrine of plain error in civil cases is not favored and thus, its application must be limited to "those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Id.* at 121; *Richards v. Newberry*, 12th Dist. Clermont

No. CA2014-08-061, 2015-Ohio-1932, ¶ 14.

{¶ 33} It is well established that an individual does not possess a constitutional or statutory right to a jury trial during a probate proceeding. *Everhart v. Everhart*, 12th Dist. Fayette Nos. CA2013-07-019 and CA2013-09-026, 2014-Ohio-2476, ¶ 16. According to statute, a probate court may refer questions of fact to a jury for its determination, but the statute does not create a right to have damages determined by the jury. R.C. 2101.31. Moreover, Ohio's trust code empowers a trial court to take several actions regarding remedies for breach of duty. R.C. 5810.01(B). The statute, however, does not guarantee that such remedies are to be determined by a jury.

{¶ 34} Even if this court applies a plain error standard of review, there is no reversible error because Tammy did not have the right to have damages determined by the jury. Thus, Tammy's final assignment of error is overruled.[2]

{¶ 35} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.

---

2. Terry filed a cross-appeal in which he challenges the probate court's decision to deny his motion for a directed verdict after he argued that Tammy violated a no-contest provision in the trust by bringing suit. However, by virtue of the jury's verdict and our affirmance of the probate court's decisions, Tammy will not take under the trust, thus rendering Terry's assignment of error moot.