NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0079n.06
Case No. 22-3532

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 08, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| KELLY L. WEST, Trustee, | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| DEAN HEIMERMANN, COUNTRY SIDE | ) | OHIO |
| AVIATION, LLC, | ) | |
|     Defendants-Appellees. | ) | OPINION |

Before: SUTTON, Chief Judge; SILER and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Kelly L. West ("West"), as trustee of the J.R. West Revocable Living Trust, appeals the district court's order granting summary judgment to Dean Heimermann and Country Side Aviation, LLC (collectively "Heimermann") on her purported claims of rescission, constructive fraud and damages. For the following reasons, we AFFIRM.

**I.**

This case arises from Heimermann's purchase of certain aircraft equipment from West's father, J.R. West ("J.R.")—specifically, four Pratt-Whitney turbine aircraft engine cores, a Pratt-Whitney turbine hub, compressor blades, and other miscellaneous parts. Prior to the sale, the equipment belonged to Skydive Greene County, Inc., a company owned by the J.R. West Revocable Living Trust, which J.R. established and operated as its trustee. In 2017, after undergoing surgery for a fractured femur, J.R. began experiencing mental difficulties and started

ceding some of his business responsibilities to West. Subsequently, on March 30, 2018, J.R. executed an amendment to his trust ("Amended Trust"), which clarified the terms under which it was to be administered before and after his death. For example, the trustee was obligated to invest and manage the Trust's assets and to distribute the Trust's net income profits to J.R. and his wife. Notably, the Amended Trust stated that "[p]rovided [J.R.] is not under a disability, [J.R.] shall have the right to withdraw any property in the trust estate at any time and from time to time." [R. 26-2, PageID 105]. On the effective date of the Amended Trust (March 30, 2018), J.R. resigned as its trustee and nominated West as his successor, which she accepted on the same day.

In May 2018, West, as trustee, placed an advertisement on the "Beech 18 Facebook group, a web site dedicated to owners and operators of Beech 18 aircraft[,]" for certain equipment owned by Skydive Greene County, including some of the equipment at issue here. [R. 38-14, PageID 267; R 38-16, PageID 271]. Heimermann was a member of the Facebook group and the sole owner of Country Side Aviation, an aviation company that specialized in agriculture services. He had also known J.R. for over 20 years. On November 16, 2018, Heimermann visited J.R. to view the equipment, which he ultimately purchased for $3,000. Subsequently, on December 4, 2018, Heimermann sold a portion of the equipment to a technical college for $36,000.

The parties do not dispute that J.R. sold the equipment to Heimermann without West's knowledge or consent. West only learned about the transaction after it was completed. On January 14, 2019, West contacted Heimermann to seek recission of the purchase, offering to return Heimermann's $3,000 in exchange for the purchased equipment.[1] On February 14, 2019, Heimermann rejected West's offer. West then filed suit.

---

[1] There is some inconsistency regarding the date of the transaction. West's complaint and Heimermann's motions for summary judgment state that the transaction occurred on November 18, 2018, while West's oppositions to Heimermann's motions and attached affidavit state that the transaction occurred on November 16, 2018. We do not

West's complaint, totaling only six pages, asserted two claims against Heimermann, which she titled "recission" and "damages." [R. 1, PageID 5–6]. Specifically, West alleged that "Heimermann took unconscionable advantage of the deteriorated mental condition of [her father] in procuring possession and control of [the equipment] having provided grossly inadequate consideration for the lawful transfer of title of these tangible items to such a degree to be evidence of fraud." [*Id.* at 5]. As a result, West claimed that she was entitled to recission of the purchase or, in the alternative, $129,000 in damages.

In discovery, West identified two medical experts but did not produce expert reports for them. Instead, the only information her disclosures provided regarding the subject matter of their testimony was the following: "Physical and mental condition of [J.R.], historically and at the time [Heimermann] acquired engines and parts." [R. 26-8, PageID 152].

Heimermann moved for summary judgment on both liability and damages. The district court granted the motion on liability grounds, pretermitting a damages analysis.

## II.

We review a district court's grant of summary judgment de novo. *See Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1226 (6th Cir. 2022) (citation omitted).

We review a district court's sanctions determination for abuse of discretion. *See NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 380 (6th Cir. 2022). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019) (citation omitted).

---

find the difference in the dates to be material to the dispute. As such, and because Heimermann's check for the purchase was dated November 16, 2018, we treat November 16, 2018, as the date of the transaction.

This is a diversity case, and the parties agree that Ohio substantive law applies. *See Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016) (observing that we need not conduct a choice-of-law inquiry when there is no dispute on the applicable substantive law).

**III.**

**A. Summary judgment.**

On appeal, West argues that the district court, in granting summary judgment to Heimermann: (1) erred in requiring expert testimony for purposes of establishing J.R.'s disability and excluding West's medical experts, (2) misapplied the law in determining that J.R. was not disabled per the Amended Trust and thus empowered to sell the relevant equipment to Heimermann, and (3) improperly dismissed her claim for constructive fraud. We take each argument in turn.

1. West's evidence of J.R.'s disability.

There are three questions to consider regarding West's evidence concerning J.R.'s disability. First, was West required to submit expert testimony to establish that her father was mentally incompetent and thus foreclosed from selling the relevant equipment to Heimermann? Second, did West properly disclose her medical experts under Federal Rule of Civil Procedure 26? And third, did the district court abuse its discretion by excluding these experts under Federal Rule of Civil Procedure 37? We take each question in turn.

*The Necessity of Expert Testimony*. Under Federal Rule of Evidence 702, expert testimony is appropriate when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a).

West argues that J.R.'s mental incompetency can be established solely through lay testimony. But we need not decide this question because West failed to contest Heimermann's

4

argument that expert testimony was necessary to establish J.R.'s competency in response to Heimermann's motion for summary judgment. Thus, this argument has been forfeited. *See Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021).

*West's Medical Expert Disclosure*. Federal Rule of Civil Procedure 26 specifies the requirements for expert witness disclosures. This rule requires parties to disclose all expert witnesses whose testimony they "may use at trial." FED. R. CIV. P. 26(a)(2)(A). If the expert was retained or specifically "employed to provide expert testimony" on the party's behalf, or the expert's "duties as the party's employee regularly involve giving expert testimony," the party's "disclosure must be accompanied by a written expert report." FED. R. CIV. P. 26(a)(2)(B). If not, a report is not required. *See* FED. R. CIV. P. 26(a)(2)(C). Even when an expert report is not required, expert disclosures must state: (1) "the subject matter on which the expert is expected to" testify, and (2) "a summary of the facts and opinions" underpinning the expected testimony. *Id.*

The record below is unclear as to whether West retained her two medical experts for this litigation, as they also appear to have been J.R.'s treating physicians. What is clear is that West failed to produce expert reports for these two expert witnesses and also failed to provide a summary of the facts and opinions for them. In fact, the only information West provided regarding their testimony was the following: "Physical and mental condition of [J.R.], historically and at the time [Heimermann] acquired engines and parts." [R. 26-8, PageID 152]. This does not satisfy Rule 26(a)(2)(B) or Rule 26(a)(2)(C).

*Rule 37 Sanction*. Federal Rule of Civil Procedure 37 articulates the appropriate sanction for failing to comply with Rule 26(a). Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). West's disclosure of her medical experts failed to comply with Rule 26(a). West has made no argument, either before the district court or before us, that her failure to comply was harmless or substantially justified. Therefore, West has forfeited any challenge to the district court's sanction imposition. *See Johnson*, 13 F.4th at 503.

2.  J.R.'s authority to dispose of the Amended Trust's property.

The interpretation of a trust is a question of law that is reviewed de novo. *See Arnott v. Arnott*, 972 N.E.2d 586, 589–90 (Ohio 2012). "[A] court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent." *Domo v. McCarthy*, 612 N.E.2d 706, 711 (Ohio 1993). "Interpreting a trust is akin to interpreting a contract." *Arnott*, 972 N.E.2d at 590. As such, our role is "to ascertain and give effect to the intent of the parties." *Id.*

"In interpreting the terms of a trust, a settlor's intent is determined by considering the language used in the trust, reading all the provisions of the trust together and 'in light of the applicable law, and circumstances surrounding the [trust's] execution.'" *KeyBank Nat'l Ass'n v. Firestone*, 140 N.E.3d 1019, 1024 (Ohio Ct. App. 2019) (quoting *Cent. Tr. Co. of N. Ohio, N.A. v. Smith*, 553 N.E.2d 265, 269 (Ohio 1990)). "Generally, when the language of the instrument is not ambiguous, a court may ascertain the settlor's intent from the express terms of the trust itself." *Id.* In this regard, we presume that the settlor used the words in the trust "according to their common, ordinary meaning." *In re Tr. of Brooke*, 697 N.E.2d 191, 194 (Ohio 1998).

Pursuant to § 2.3 of the Amended Trust, J.R. was permitted to "withdraw any property in the trust estate at any time," permitted that he was not "under a disability." [R. 26-2, PageID 105]. When read in conjunction with the Amended Trust as a whole, J.R. intended § 2.3 to provide him

with wide latitude to exercise control over the property, including its disposition, subject to the limited circumstance that he was "under a disability." As a result, West's claim rests entirely on proving that her father was disabled at the time he sold the equipment to Heimermann.

The Amended Trust does not define what constitutes a "disability" under § 2.3. Generally, a disability is defined as "[a]n objectively measurable condition of impairment, physical or mental, esp[ecially] one that prevents a person from engaging in meaningful work[.]" *Disability*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see Disability*, OXFORD ENGLISH DICTIONARY (3d ed. 2008) (defining "disability" as "[a] physical or mental condition that limits a person's movements, senses, or activities."). This appears to be West's interpretation, namely that "disability" should be construed according to its ordinary meaning. This would have limited J.R. from selling the relevant equipment to the degree that his mental or physical impairment limited his ability to manage the property of the Amended Trust.

The timing of the Amended Trust's execution is relevant to our interpretation of the term "under a disability." As West admits, for over a year prior to the Amended Trust's execution, her father "suffered increasingly frequent episodes of memory loss and dementia . . . which prohibited him from focusing on business details as well as conducting business in a competent fashion[.]" [R. 38, PageID 236–37]. Thus, under West's interpretation, he was already "under a disability" at the time he executed the Amended Trust because he was limited in managing the Trust's property by reason of his mental impairment. This cannot be so. There simply appears to be no reason why J.R. would draft § 2.3 in a manner that rendered it meaningless the moment it took effect. The term "under a disability" must be construed in a more limited fashion.

Heimermann argues that the term should be read as synonymous with the concept of mental incapacity. We agree. An inter vivos trust "speaks from the date of its creation." *First Nat'l Bank*

*of Cincinnati v. Tenney*, 138 N.E.2d 15, 18 (Ohio 1956). Given the mental state of J.R. at the time he executed the Amended Trust, he intended to retain his right to exercise control over the Trust's property unless or until he was in a significantly diminished mental state. Section 2.3 thus forecloses J.R. from exercising control over the Trust's property only if his mental state has eroded to such a degree that his exercise threatens the property itself. We thus read the term "disability" as synonymous with one's mental capacity to contract.

A person cannot enter into a contract without the mental capacity to do so. *See Giurbino v. Giurbino*, 626 N.E.2d 1017, 1026 (Ohio Ct. App. 1993). A person lacks the mental capacity to contract when he does not understand "the nature of the transaction and the effects of [] his own actions[.]" *Webb v. Anderson Children Trust*, 160 N.E.3d 804, 811 (Ohio Ct. App. 2020); *see Weinberg v. Weinberg*, 117 N.E.3d 907, 913 (Ohio Ct. App. 2018). In cases where a contract implicates assets that would otherwise be subject to testamentary disposition, Ohio courts have equated contractual capacity with that of testamentary capacity. *See Webb*, 160 N.E.3d at 811; *Weinberg*, 117 N.E.3d at 913; *Giurbino*, 626 N.E.2d at 1026. The test for testamentary capacity is whether the testator had sufficient mind and memory to: (1) understand the nature of the business in which he engaged, (2) generally comprehend the nature and extent of his property, (3) hold in his mind the names and identities of those who had natural claims upon his property, and (4) appreciate his relation to members of his family. *See Webb*, 160 N.E.3d at 811. The party seeking to void the transaction must prove these factors by clear and convincing evidence. *See id.*

West cannot satisfy the test for testamentary incapacity. Her response to Heimermann's motions for summary judgment did not claim or argue that her father was mentally incapacitated at the time he sold the relevant equipment to Heimermann. Nor does she do so on appeal. Because

there was no genuine issue of fact for West's rescission claim, the district court did not err in granting summary judgment to Heimermann.

　　　　3.　West's constructive fraud claim.

West argues that the district court erred in dismissing her claim for constructive fraud. We find no error in the dismissal.

It is well-settled that "a non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion." *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2723 (3d ed. Supp. 2005)). If West wanted to assert a new claim at the summary judgment stage, the proper procedure was to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a). *See id.* She failed to follow this procedure. Her claim for constructive fraud was properly dismissed.

West argues that her complaint's use of the word "fraud" put Heimermann on notice of her constructive fraud claim. This argument is unconvincing. Such barebones claims are insufficient to put a defendant on notice as to the nature of the claim, especially at the motion for summary judgment stage. *See West v. Wayne Cnty.*, 672 F. App'x 535, 541 (6th Cir. 2016) (declining to consider a First Amendment claim that was raised for the first time in opposition to a summary judgment motion, even though the complaint stated that the defendants violated the plaintiff's "Freedom of Political Association.").

## B.　Heimermann's motion for sanctions.

Heimermann filed a motion for sanctions with this Court arguing that Rule 38 and 28 U.S.C. § 1927 sanctions are appropriate given: (1) the conduct of West and her counsel below, (2) the decision by West and her counsel to appeal their case without any reasonable expectation

of prevailing, and (3) the arguments that West and her counsel advance on appeal, many of which were either forfeited below or based on incorrect or bad law. We only consider the conduct before us in adjudicating Heimermann's motion.

Federal Rule of Appellate Procedure 38 permits the award of "just damages and single or double costs to the appellee" upon a determination that an appellant's appeal is "frivolous." FED. R. APP. P. 38. Generally, an appeal is frivolous "if it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes." *Dallo v. INS*, 765 F.2d 581, 589 (6th Cir. 1985); *see Larry E. Parrish, P.C. v. Bennett*, 989 F.3d 452, 457 (6th Cir. 2021).

Similarly, 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Larry E. Parrish*, 989 F.3d at 458. In the past, we have awarded § 1927 sanctions where "an attorney objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (internal quotation marks and citation omitted).

We cannot say that West's appeal was frivolous. At a minimum, West made a reasonable argument regarding the meaning of the term "under a disability" in the Amended Trust. While this argument did not win the day, an unsuccessful appeal does not equate to a frivolous appeal. *See Hogan v. Jacobson*, 823 F.3d 872, 886–87 (6th Cir. 2016); *Valhalla Inv. Props., LLC v. 502, LLC*, 832 F. App'x 413, 416 (6th Cir. 2020).[2]

---

[2] Heimermann also argues that sanctions are appropriate under 28 U.S.C. § 1912, which permits the discretionary award of "just damages for [the appellant's] delay, and single or double costs" in circumstances where the lower court's judgment is affirmed. *See Hogan*, 823 F.3d at 886. The application of § 1912 is similar to that of Rule 38.

10

The question of whether sanctions are appropriate under § 1927 is a much closer call. While it is troubling that West's counsel raised several forfeited arguments on appeal, we do not find that § 1927 sanctions are warranted.

**IV.**

For the aforementioned reasons, we AFFIRM the district court's grant of summary judgment for Heimermann and DENY Heimermann's motion for sanctions.

---

*Id.* Thus, for the same reasons that we decline to award sanctions under Rule 38, we decline to award sanctions under § 1912.