NORRIS v. POOL
2023 OK 47
Case Number: 118980
Decided: 04/25/2023
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 47, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

JEAN NORRIS a/k/a JEANNIE NORRIS, CAROL MIKLES, and KENNETH HOPCUS, Plaintiffs/Appellees,
v.
STEVEN POOL, Defendant/Appellant,
and
STIFEL NICOLAUS & COMPANY, Defendant/Appellee.
ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION IV
¶0 The appellees seek a declaratory judgment recognizing them as the primary beneficiaries of a retirement account belonging to the decedent, their cousin. The appellant, the son of the decedent, counterclaimed, seeking an order declaring him the sole beneficiary based on an executed change of beneficiary form received by the IRA custodian after the death of the decedent. The district court granted summary declaratory judgment in favor of the appellees and determined they are the beneficiaries of the retirement account. The decedent's son timely appealed, and the Court of Civil Appeals affirmed. This Court granted certiorari. We hold that the decedent substantially complied with the requirements of her IRA plan to change her beneficiary to her son, and the IRA funds should be disbursed per the decedent's intent. 
COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT REVERSED;
CAUSE REMANDED WITH INSTRUCTIONS 
TO GRANT SUMMARY JUDGMENT IN FAVOR OF APPELLANT.
Randall A. Gill and Randi N. Gill, Gill Law Firm, Tulsa, Oklahoma, for Appellees.
Thomas N. Marcum, Burrage Law Firm, Durant, Oklahoma, for Appellant Steven Pool.
Winchester, J.
¶1 Appellees Jean Norris a/k/a Jeannie Norris, Carol Mikles, and Kenneth Hopcus (collectively Cousins) brought this action seeking an order declaring Cousins as the primary beneficiaries of an Individual Retirement Account (IRA) belonging to their cousin, Sandra Pool (Decedent), based on the IRA plan language and a beneficiary designation executed by Decedent. Appellant Steven Pool, the son of Decedent (Son), sought an order declaring him the sole beneficiary of the IRA based on a change of beneficiary form received by the IRA custodian, Stifel Nicolaus & Company (Stifel), after Decedent's death. The district court granted summary declaratory judgment in favor of Cousins, determining they were the beneficiaries of the IRA. Son timely appealed, and the Court of Civil Appeals (COCA) affirmed. This Court granted certiorari.
¶2 The very narrow question in this case is whether Stifel had to be in possession of the executed change of beneficiary form prior to Decedent's death to constitute a valid change of beneficiary. We answer this question in the negative. We hold that Decedent substantially complied with all the requirements of the IRA plan language to designate Son as the beneficiary of her IRA account except for Stifel receiving the form in the mail prior to her death. The Court exercises its equitable powers to disburse the IRA funds per Decedent's intent.
FACTS AND PROCEDURAL HISTORY
¶3 On August 21, 2012, Decedent opened a traditional IRA account with Stifel. She named Cousins as equal one-third beneficiaries of her IRA account. At the time, Decedent was estranged from Son, but Decedent reconnected with Son at some time prior to her death.
¶4 On November 6, 2017, following her cancer diagnosis and treatment, Decedent contacted Stifel to request a change of beneficiary form. Stifel mailed the form to Decedent the same day. The Stifel beneficiary disclosure for the change of beneficiary form stated:
You may designate one or more persons or entities as beneficiary of your IRA. This designation can only be made on a form provided by or acceptable to us, and it will only be effective when it is filed with us during your lifetime. 
Decedent filled out the change of beneficiary form designating Son as a primary beneficiary and executed it on November 7, 2017.
¶5 On November 15, 2017, Decedent contacted Stifel, stating that she forgot to indicate on her change of beneficiary form what her relationship was with Stephen Pool and Carol Nichols as requested in the document.
¶6 On November 20, 2017, Stifel received Decedent's change of beneficiary form in the mail. Stifel rejected the form because it contained numerous errors, inconsistencies, and missing information. Stifel notified Decedent that it could not accept the form and it would be sending her a second change of beneficiary form to execute. Decedent indicated that she would correct the form and mail it back. Stifel sent Decedent a second change of beneficiary form that same day.
¶7 The second change of beneficiary form had preprinted information from Stifel, including that the primary beneficiary was Son receiving 100% of the assets and the contingent beneficiary was Cousin Carol Mikles. On November 24, 2017, Decedent executed the second change of beneficiary form that indicated that Son was the primary beneficiary--the same she had previously attempted to indicate on her original beneficiary form and as she relayed to Stifel. Decedent passed away on December 2, 2017. Stifel received the second change of beneficiary form on December 5, 2017, three days after Decedent's death.
¶8 Stifel did not process the second change of beneficiary form because the form was not filed with Stifel prior to Decedent's death. Son and Cousins all sought distribution of the IRA funds. Due to the competing claims, Stifel restricted distribution.
¶9 Cousins sought a declaratory judgment and injunctive relief, requesting that the district court declare them the beneficiaries of the IRA. Cousins moved for summary judgment. They contended that Stifel properly rejected the change of beneficiary form because the form did not comply with the terms of Decedent's IRA plan and the Internal Revenue Service (IRS) rules and regulations as Stifel received the form in the mail after Decedent's death.
¶10 Son also moved for summary judgment, arguing he was the sole beneficiary of the IRA. Son asserted that Decedent had done everything in her power to comply with the IRA plan to name him the beneficiary of the IRA but for Stifel receiving the corrected form in the mail. Therefore, the district court should determine him to be the beneficiary.
¶11 Stifel took no position with respect to the parties' dispute and awaits a judicial determination of the proper beneficiary.
¶12 The district court granted summary judgment in favor of Cousins, determining they were the designated beneficiaries of Decedent's IRA account. Son appealed. COCA affirmed the district court's grant of summary judgment to Cousins. COCA held that the IRA plan language controlled; since Decedent did not file the change of beneficiary form with Stifel prior to her death, the change of beneficiary did not occur. We granted certiorari.
STANDARD OF REVIEW
¶13 Summary judgment resolves issues of law, and we review a district court's grant of summary judgment de novo. U.S. Bank, N.A. ex rel. Credit Suisse First Boston Heat 2005--4 v. Alexander, , ¶ 13, , 939. Using the de novo standard, we subject the record to a new and independent examination without regard to the district court's reasoning or result. Gladstone v. Bartlesville Indep. Sch. Dist. No. 30, , ¶ 5, , 446. The Court has plenary, independent, and non-deferential authority to determine whether the district court erred in its legal rulings. State ex rel. Protective Health Servs. State Dep't of Health v. Vaughn, , ¶ 9, , 1064.
ANALYSIS
¶14 Cousins claim that they are the beneficiaries of the IRA, contending that Decedent's change of beneficiary form was invalid because Stifel did not receive the form prior to her death. Son counters that Decedent did everything in her power to name him the beneficiary of the IRA and that we should uphold Decedent's intent. We agree with Son.
¶15 The Court invokes strict compliance with the policy or plan language for the protection of the custodian so that the custodian is not liable to pay a loss more than once. There is no risk of double liability when, as in this case, all claimants are present. Bowser v. Bowser, , ¶ 8, , 519.
¶16 Oklahoma has recognized the doctrine of substantial compliance when the owner "has done all in his power to effect a change of beneficiar[y], and after his death only ministerial acts remain to be performed." Harjo v. Fox, , ¶ 9, , 301; see also Ivey v. Wood, , ¶ 24, , 626. In Gray v. Fidelity Brokerage Services, LLC, , ___ P.3d ___, we recently held that the doctrine of substantial compliance can be applied in the context of a beneficiary designation for an IRA. The decedent in Gray executed the relevant IRA rollover documents, including a beneficiary designation that listed each of his children as receiving a certain dollar amount and his wife as receiving the balance. Id. ¶ 8. When the custodian of the IRA advised that the beneficiary designation had to be reflected by a percentage share, the decedent inquired into whether the decedent could designate by a dollar amount instead of a percentage. The custodian allowed this designation by a letter of authorization. Id. ¶ 9. Two days later, the decedent passed away without any further communication from the IRA custodian. The custodian then rejected the beneficiary designation because the decedent's attempted designations exceeded the value of the IRA. Id. ¶ 10. This Court found that the decedent reasonably believed that he had complied with the custodian's requirements and had no reason to believe that he had not properly designated beneficiaries for his IRA. The Court, acting in equity, enforced the attempted beneficiary designation as the owner of the account had done everything in his power to designate his beneficiaries. Id. ¶ 23.
¶17 In the same way, the substantial compliance doctrine should apply to our present analysis. The remaining issue is whether Son provided sufficient evidence to meet the standard for substantial compliance concerning Decedent's change of beneficiary to her IRA.
¶18 In this case, Decedent's attempt to designate a new beneficiary of her IRA comes within the purview of the doctrine. We find guidance in cases from our Court where a decedent had executed a change in beneficiary form or equivalent writing, but some ministerial act mandated by the custodian was not completed. The Court held a beneficiary change valid as it gave effect to the intent of the decedent where the decedent did everything in his or her power to fulfill that ministerial act.
¶19 In Bowser, , , an insured attempted to change the beneficiary on his insurance policy by executing and delivering his request for a beneficiary change to the insurance company. The policy provided that a change of beneficiary could only be made by filing a written notice and delivering the insured's policy to the company. Id. ¶ 5, 211 P.2d at 519. The insured never endorsed the change of beneficiary on his insurance policy nor forwarded the policy to the company prior to his death. The evidence disclosed that the insured made two efforts to change his beneficiary. In his first application, the insured stated the policy was lost. In his second application, the insured stated his former wife was in possession of the policy but refused to deliver the policy to him. Id. ¶ 6, 211 P.2d at 519. The Court found that the insured had done everything in his power to change the beneficiary to the insurance policy. The insured had attempted to obtain the policy but was unable to because of his former wife's refusal. The Court allowed the change of beneficiary without fulfilling the policy's requirement of delivering the endorsed policy to the insurance company. Id. ¶ 10, 211 P.2d at 520.
¶20 In New York Life Ins. Co. v. Wilson, , , an insured executed the proper change of beneficiary forms, and the insured transmitted the forms to the home office of the insurance company prior to his death. Id. ¶ 2, 73 P.2d at 1134. However, an endorsed insurance policy was not attached to his request to change his beneficiary as the policy required. The insurance company received the policy over a month after the insured's death. Id. ¶ 15, 73 P.2d at 1136. The Court found that the insured did everything in his power to deliver the policy within the shortest possible time since he was in Arkansas and the policy was in Oklahoma. And the Court gave effect to the insured's intent to change his beneficiary. Id. ¶ 18, 73 P.2d at 1136.
¶21 Conversely, in Carson v. Carson, , , an insured failed to present an endorsed policy to the insurance company. The Court found that the insured did not do everything in his power to change his beneficiary, concluding that the insurance company twice called to the insured's attention five months prior to his death that the company was insisting upon a return of the policy and the endorsement of the change of beneficiary as required by the policy. Yet the insured took no further steps to obtain possession of the policy and thereby in effect abandoning his effort to change the beneficiary. Id. ¶ 20, 26 P.2d at 741; see also O'Neal v. O'Neal, , ¶¶ 11, 15, , 597-98 (holding the insured did not do everything in his power to change the beneficiary of his insurance policy because the insured did not make a demand on the person in possession of the policy to deliver the policy to the insured).
¶22 We hold that the facts in this case are akin to Bowser and Wilson as Decedent took multiple steps to change her beneficiary. It is undisputed that approximately 25 days before her death, Decedent contacted Stifel to request a change of beneficiary form. Stifel mailed the form to Decedent the same day. Stifel received in the mail Decedent's executed change of beneficiary form, but Stifel rejected the form because it contained numerous errors and missing information. Stifel contacted Decedent to explain the issues regarding her change of beneficiary form, and a new form was sent to Decedent the same day. Stifel was aware that Decedent intended to change her beneficiary to Son because Stifel preprinted information on the second beneficiary form prior to sending it to Decedent, including printing Son's name as the primary beneficiary. The second change of beneficiary form was executed by Decedent prior to her death. However, the form was not received by Stifel until three days after her death.
¶23 Further, Son communicated to Stifel that Decedent mailed the second change of beneficiary form prior to her death. We note that the first change of beneficiary form took at least five days to mail from Decedent in Texas to Stifel in Oklahoma. Decedent called on Wednesday, November 15, 2017, to indicate that she had made a mistake on the first form that she had already mailed to Stifel. Yet Stifel did not receive the first form until Monday, November 20, 2017. Stifel received the second change of beneficiary form on Tuesday, December 5, 2017. Decedent passed away on Saturday, December 2, 2017. Because Decedent's death fell on Saturday and Stifel received the second form on Tuesday, there was only one business day between the time of her passing and the time Stifel received the second change of beneficiary form. The evidence demonstrates with substantial certainty that Decedent mailed the second change of beneficiary form before the date of her death, and Decedent reasonably believed that she had complied with Stifel's requirements to change the beneficiary of her IRA at the time of her death. Like in Bowser and Wilson, we hold the evidence in this case demonstrates that Decedent had done everything in her power to effectuate her change of beneficiary, including the ministerial act of mailing the form to Stifel.
¶24 Cousins contend that the federal rules and regulations that govern IRA accounts require that all change of beneficiary forms must be received by the account administrator before the death of the account owner. We disagree. IRS regulations that govern IRAs expressly provide for distributions of the IRA to beneficiaries upon the death of the owner and define "beneficiaries" to include "any person designated by the [owner] to share in the benefits of the account after [the] death of the [owner]." 26 C.F.R. § 1.408-2(b)(7), (8) (2022). To be a designated beneficiary, an individual must be a beneficiary designated as of the date of death. 26 C.F.R. § 1.401(a)(9)-4 (2022); Distributions from Individual Retirement Arrangements, IRS Publication 590-B (2017), available at https://www.irs.gov/publications/p590b. No federal rules or regulations state that the change of beneficiary form must be filed or that the account administrator must receive the form before the death of the account holder. The only requirement is that the beneficiary is designated prior to the death of the owner of the IRA.
¶25 It is undisputed that Decedent communicated with Stifel her intention to change her beneficiary and executed the second change of beneficiary form before her death. Further, the evidence indicates that the second form had been mailed to Stifel. Therefore, Decedent complied with the federal rules and regulations that govern IRA accounts when she executed the second change of beneficiary form and mailed it to Stifel, designating her Son as the beneficiary of Decedent's IRA before her death.
CONCLUSION
¶26 Decedent substantially complied with all the requirements to change the beneficiary of her IRA account, and the Court uses its equitable powers to give effect to Decedent's intent to name Son as the beneficiary of her IRA. Based upon our analysis, we reverse the district court's judgment in favor of Cousins and the cause is remanded with instructions for the district court to grant summary judgment in favor of Appellant Steven Pool.
COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT REVERSED;
CAUSE REMANDED WITH INSTRUCTIONS 
TO GRANT SUMMARY JUDGMENT IN FAVOR OF APPELLANT.
Kane, C.J., Kauger, Winchester, Edmondson, Combs, and Kuehn, JJ., concur.
Rowe, V.C.J. (by separate writing), and Darby, J. (by separate writing), dissent.
Gurich, J., recused.
FOOTNOTES
 Decedent designated two primary beneficiaries, but she mistakenly wrote her own name in a space. She marked through her name and wrote Son's name in the space for Primary Beneficiary #1, without initialing the change. She also designated that both beneficiaries were to receive 100% of the assets. She further failed to indicate her marital status.
 The parties agreed that the facts were undisputed and stipulated that the question was one of law for the district court to determine.
 Other jurisdictions have also applied the substantial compliance doctrine to a change of beneficiary for an IRA. See, e.g., In re Estate of Golas, 751 A.2d 229, 232-33 (Pa. Super. Ct. 2000) (invoking substantial compliance to affirm the award of proceeds of an IRA account to the executors of the accountholder's estate, instead of the first designated beneficiary, where a terminally ill accountholder requested change of beneficiary forms but failed to receive them before his death); In re Estate of Freeberg, 122 P.3d 741, 744 (Wash. 1974) (holding that an insured substantially complied with the IRA custodian's requirement to change a beneficiary by personally asking the custodian to make the change on his investment and IRA accounts). Other jurisdictions have applied a similar "clearly expressed intent" test. See, e.g., Gen. Mills Fed. Cred. Union v. Lofgren, 839 N.W.2d 766, 773 (Minn. 2013) (concluding that the district court may apply equitable principles to determine that the named beneficiary is not the rightful beneficiary if the evidence warrants such determination); LeBlanc v. Wells Fargo, 981 N.E.2d 839, 847 (Ohio 2012) (noting that if an IRA custodian files an interpleader action, and the account owner's intent to change beneficiaries was clearly communicated to the custodian, the proceeds will be paid to the newly designated beneficiary rather than to the original beneficiary).
 The language of the IRA plan states that the change of beneficiary is only effective when it is filed. However, the plan does not define filed. We note that our Court follows the mailbox rule which specifies that the date of mailing shall constitute the date of filing. (B). The purpose of the application of the mailbox rule in this Court is so appellants who do not live within a reasonable driving distance of Oklahoma City are not at a disadvantage to those who do, allowing for "evenhanded statewide application." Whitehead v. Tulsa Pub. Sch., , ¶ 5, , 1213. Although the mailbox rule enunciated in section 990A applies expressly to appeals to the Supreme Court, its common law predecessor was not so limited and was articulated as a rule of contract law. See Johnson v. Tony's Town Mister Quick, , ¶ 4 n.4, , 357 n.4. We believe the application of the mailbox rule could benefit a decedent in a case of this nature. The purpose of deeming a form filed at the time of mailing would allow for compliance with the IRA plan language for those instances where the form is mailed prior to a decedent's death but received by the custodian after the decedent's death.

ROWE, V.C.J., dissenting:
¶1 I recently dissented in Gray v. Fidelity Brokerage Services, , ___ P.3d ___ to the majority's application of the doctrine of substantial compliance. I dissent today for the same reason.
¶2 In Gray, the majority applied the arbitrary equitable doctrine of substantial compliance to reform a mistake made by the decedent on a beneficiary designation form for an IRA account. The majority determined the decedent's attempt to designate beneficiaries to his IRA came within the purview of the substantial compliance doctrine by concluding that the decedent, prior to his death, reasonably believed he had "done everything in his power to designate beneficiaries and followed Fidelity's instructions." Id. ¶ 23, __ P.3d, ___.
¶3 As in Gray, the majority, "acting in equity," applies the doctrine of substantial compliance because the decedent "[did] everything in her power to effectuate her change of beneficiary," thereby reversing the trial court's legal finding that decedent failed to comply with the IRA plan's contractual language. The majority's reversal of the trial court's ruling--a reversal rooted in equity--is inconsistent with our jurisprudence and will serve to promote inconsistency within our appellate jurisprudence.
¶4 IRA accounts are governed by federal rules and regulations. 26 CFR 1.401(a)(9)-4 specifically provides:
A designated beneficiary is an individual who is designated as a beneficiary under the plan. An individual may be designated as a beneficiary under the plan either by the terms of the plan or, if the plan so provides, by an affirmative election by the employee (or the employee's surviving spouse) specifying the beneficiary. 
(Emphasis added). The terms of decedent's IRA plan allowed her to designate beneficiaries subject to the fulfillment of certain requirements. One of those requirements being that she change her beneficiary and file of record with the custodian prior to her date of death. This specific requirement was not fulfilled in this case. According to the terms of the IRA plan, decedent's attempt to change the beneficiary of her IRA was ineffective.
¶5 Further, 26 CFR 1.401(a)(9)-4 provides: "In order to be a designated beneficiary, an individual must be a beneficiary as of the date of death." Decedent passed away before the custodian received and filed the change. The majority attempts to tip-toe around this requirement by finding that because decedent mailed the change prior to her death, the mailing date constitutes the date of filing. The majority reaches this conclusion by finding that (A)(B)--which adopts the mailbox rule as the date of filing for a petition in error with this Court--now applies to IRA plans. Nowhere does our jurisprudence extend § 990(A)(B) beyond the filing of petitions in error with this Court. The majority's spinning of this statute to justify its desired equitable outcome is yet another departure from our jurisprudence.
¶6 Moreover, the IRA plan was a contractual agreement between decedent and Stifel. "The paramount objective of contract interpretation is to effectuate the intent of the parties as expressed by the terms of the contract." Walker v. Builddirect.Com Techs. Inc., , ¶ 9, , 552. When decedent contracted with Stifel, she accepted the terms of the IRA plan, which clearly outlined the requirements necessary to change a designated beneficiary. The majority's equitable expedition to obviate the express language of the IRA plan is an intrusion on the parties' right to contract. "Absent illegality, the parties are free to [contract] as they see fit, and the court may neither make a new contract, nor rewrite the existing contract." Oxley v. Gen. Atl. Res., Inc., , ¶ 14, , 945--46. Accordingly, I respectfully dissent.
FOOTNOTES
 Majority Opinion, ¶ 16.
 Id. ¶ 23.
 The filing of the petition in error may be accomplished either by delivery or mailing by certified or first-class mail, postage prepaid, to the Clerk of the Supreme Court. The date of filing or the date of mailing, as shown by the postmark affixed by the post office or other proof from the post office of the date of mailing, shall constitute the date of filing of the petition in error. If there is no proof from the post office of the date of mailing, the date of receipt by the Clerk of the Supreme Court shall constitute the date of filing of the petition in error.

Darby, .J., dissenting:
¶1 I respectfully dissent because the Nonprobate Transfers Law of Missouri, Mo. Ann. Stat. §§ 461.003--461.081 (West), provides that a beneficiary change relates back to and is effective as of the time when the change request was received by the IRA custodian, or "transferring entity." Mo. Ann. Stat. § 461.012(3) (West). The parties in this case seek a court's determination about the lawful owner of an IRA account now that the Mrs. Pool, the owner, has passed away. The dispute arises between parties that seek to be declared the rightful beneficiary(ies) of the IRA account. Mrs. Pool opened an IRA account with Stifel, Nicolaus & Company. At that time, Stifel provided her with the Stifel Account Agreement and Disclosure Booklet. Stifel's basic terms and conditions require the agreement and any transactions to be construed and governed by the laws of Missouri. Stifel Account Agreement and Disclosure Booklet at p. 9.
¶2 An IRA account is made nontestamentary by statute. Mo. Ann. Stat. § 461.001 (West). Under Missouri law, the transfer of the IRA account to a beneficiary is subject to the agreement between the owner and the transferring entity, in this case--Mrs. Pool and Stifel. See Mo. Ann. Stat. § 461.012 (West). This is true when the submission to the transferring entity (Stifel) of a beneficiary designation is required under the governing instrument. Mo. Ann. Stat. § 461.012 (West). The law further provides the rule for when a beneficiary change is effective. Mo. Ann. Stat. § 461.012(3) (West). "When a beneficiary designation, revocation or change is subject to acceptance by a transferring entity, the transferring entity's acceptance of the beneficiary designation, revocation or change relates back to and is effective as of the time when the request was received by the transferring entity." Id.
¶3 This case was appealed from an order granting summary judgment. The law is clear about when the beneficiary change relates back to and is effective. There is no dispute that Stifel received the beneficiary form to change Steven Pool as the sole beneficiary on December 5, 2017. Additionally, there is no dispute that Mrs. Pool died on December 2, 2017. The terms of Stifel Agreement require the beneficiary designation to be "made on a form provided by or acceptable to [Stifel], and ... will only be effective when it is filed with [Stifel] during [Mrs. Pool's] lifetime. The beneficiary change related back to and is considered effective the date Stifel received the form, December 5, 2017, after Mrs. Pool's death. Therefore, I would affirm the district court.
FOOTNOTES
 A "nonprobate transfer" is "a transfer of property taking effect upon the death of the owner, pursuant to a beneficiary designation." Mo. Ann. Stat. § 461.005(7) (West).
 "Transferring entity" means "a person who owes a debt or is obligated to pay money or benefits, render contract performance, deliver or convey property, or change the record of ownership of property on the books, records and accounts of an enterprise or on a certificate or document of title that evidences property rights, and includes any governmental agency, business entity or transfer agent that issues certificates of ownership or title to property and a person acting as a custodial agent for an owner's property." Mo. Ann. Stat. § 461.005(16) (West).
 "Owner" is "a person or persons having a right, exercisable alone or with others, regardless of the terminology used to refer to the owner in any written beneficiary designation, to designate the beneficiary or a nonprobate transfer, and includes joint owners." Mo. Ann. Stat. § 461.005(8) (West).
 "Beneficiary" is "a person or persons designated or entitled to receive property pursuant to a nonprobate transfer on surviving one or more persons." Mo. Ann. Stat. § 461.005(1) (West).
 "Beneficiary designation" is "a provision in writing that is not a will that designates the beneficiary of a nonprobate transfer, including the transferee in an instrument that makes the transfer effective on death of the owner, and that complies with the conditions of any governing instrument, the rules of any transferring entity and applicable law." Mo. Ann. Stat. § 461.005(2) (West).